J. & J. Enterprises, Inc. & others *vs.* Ferdinand
Martignetti & others
(and three companion cases[1]).

Suffolk. November 6, 1975. — January 9, 1976.

Present: Tauro, C.J., Reardon, Quirico, Braucher, Hennessey, & Kaplan, JJ.

*Jurisdiction, Civil,* Administrative matter. *Administrative Matter.*
*Regulation of Business Practice and Consumer Protection Act.*
*Alcoholic Liquors,* License. *Alcoholic Beverages Control Com-*
*mission.*

Actions commenced by certain licensed operators of retail liquor stores
which sought damages and injunctive relief against competing
retail liquor store operators for alleged unfair trade practices should
not have been dismissed for failure to exhaust administrative reme-
dies where no administrative proceeding was pending and where
the Alcoholic Beverages Control Commission did not have au-
thority to award damages for past conduct; even in the event that
judicial action should await further administrative action, the
actions should not have been dismissed where a stay would accom-
plish the purpose of the "doctrine of prior resort" without resulting
in prejudice to the plaintiff. [536-541]

Four bills in equity filed in the Superior Court on
June 21, 1974.

Motions to dismiss were heard by *Lynch,* J., *Di-*
*mond,* J., and *Morse,* J.

The Supreme Judicial Court granted a request for direct
appellate review.

*Harold Hestnes* (*Joan Lukey* with him) for J. & J.
Enterprises, Inc. & others.

*Howard M. Miller* for Ferdinand Martignetti & others.

---

[1] The companion cases are: J. & J. Enterprises, Inc. & others *vs.*
Arthur Siegal & others; J. & J. Enterprises, Inc. & others *vs.* Ralph
Kaplan & others; and J. & J. Enterprises, Inc. & others *vs.* Donald
Corey & others.

*Allan van Gestel* for Donald Corey & others.

*Evan T. Lawson* for Ralph Kaplan & others.

*James B. Krasnoo* for Arthur Siegal & others.

*Kenneth H. Soble* for Beacon Liquor Corporation & others.

BRAUCHER, J. The plaintiffs, licensed operators of retail liquor stores, sued the defendants, operators, officers and directors of competing retail liquor stores, under G. L. c. 93A, § 11, inserted by St. 1972, c. 614, § 2,[2] for dam-

---

[2] "*Section 11.* Any person who engages in the conduct of any trade or commerce and who suffers any loss of money or property, real or personal, as a result of the use or employment by another person who engages in any trade or commerce of an unfair method of competition or an unfair or deceptive act or practice declared unlawful by section two or by any rule or regulation issued under paragraph (*c*) of section two may, as hereinafter provided, bring an action in the superior court in equity for damages and such equitable relief, including an injunction, as the court deems to be necessary and proper.

"Such person, if he has not suffered any loss of money or property, may obtain such an injunction if it can be shown that the aforementioned unfair method of competition, act or practice may have the effect of causing such loss of money or property.

"Any persons entitled to bring such action may, if the use or employment of the unfair method of competition or the unfair or deceptive act or practice has caused similar injury to numerous other persons similarly situated and if the court finds in a preliminary hearing that he adequately and fairly represents such other persons, bring the action on behalf of himself and such other similarly injured and situated persons; the court shall require that notice of such action be given to unnamed petitioners in the most effective, practicable manner. Such action shall not be dismissed, settled or compromised without the approval of the court, and notice of any proposed dismissal, settlement or compromise shall be given to all members of the class of petitioners in such a manner as the court directs.

"If the court finds for the petitioner, recovery shall be in the amount of actual damages; or up to three, but not less than two, times such amount if the court finds that the use or employment of the method of competition or the act or practice was a willful or knowing violation of said section two. In addition, the court shall award such other equitable relief, including an injunction, as it deems to be necessary and proper. The respondent may tender with his answer in any such action a written offer of settlement for single damages. If such tender or settlement is rejected by the petitioner, and if the court finds that the relief tendered was reasonable in rela-

J. & J. Enterprises, Inc. *v*. Martignetti.

ages and injunctive relief, charging unfair or deceptive acts or practices in violation of G. L. c. 93A, § 2, and Regulation XV of the Attorney General promulgated under c. 93A. They also claim that some of the acts or practices violated G. L. c. 93, §§ 2 and 9, and G. L. c. 138, §§ 15, 18, 25 and 25A. Judges of the Superior Court, following our decisions in *Holyoke Water Power Co.* v. *Holyoke*, 349 Mass. 442 (1965), and *Gordon* v. *Hardware Mut. Cas. Co.*, 361 Mass. 582 (1972), dismissed the actions because the plaintiffs had failed to exhaust their administrative remedies, and the plaintiffs appeal. We hold that, while it might have been appropriate to stay the actions, they should not have been dismissed. Cf. G. L. c. 93A, § 9 (6)-(8), inserted by St. 1973, c. 939. We therefore reverse the judgments of dismissal.

The four complaints were filed in June, 1974, by the same plaintiffs against four different groups of defendants. We summarize their allegations, which are substantially similar. The individual defendants in each case control the stores of the defendants. The defendants have contracted, combined and conspired in unreasonable restraint of trade and commerce in the sale of bottled liquor at retail, in violation of G. L. c. 93, §§ 2 and 9. In particular, each group of defendants (a) owns or controls more than three retail package store licenses, in violation of G. L. c. 138, § 15; (b) has transferred liquor between retail licensees without a wholesaler's license, in violation of G. L. c. 138, § 18; (c) has lent alcoholic beverages to

---

tion to the injury actually suffered by the petitioner, then the court shall not award more than single damages.

"If the court finds in any action commenced hereunder, that there has been a violation of section two, the petitioner shall, in addition to other relief provided for by this section and irrespective of the amount in controversy, be awarded reasonable attorneys' fees and costs incurred in said action.

"The provisions of clause (*b*) (ii) and clause (*c*) of paragraph (1) of section three shall not apply to actions brought pursuant to this section."

members of the group which were on the "posted" list, in
violation of G. L. c. 138, § 25; (d) has lent money to
members of the group in further violation of § 25; and
(e) has coerced wholesalers to give discounts in violation
of G. L. c. 138, § 25A. The defendants' advertising de-
ceives the public as to the true ownership of their stores;
their stores have lost their independent identity; and the
defendants have achieved monopolistic buying power,
monopolized trade in various relevant markets, forced
independent retail liquor stores in competition with them
out of business, and used artificially high prices in markets
they have monopolized to destroy competition in new
markets. The result is to require the plaintiffs to pay
artificially high prices for wholesale liquor, and to force
the public to pay higher prices for bottled liquor. There
is no allegation that the plaintiffs have initiated any pro-
ceedings before the Alcoholic Beverages Control Com-
mission (ABCC).

1. *The powers of the ABCC.* Most of the acts or prac-
tices of which the plaintiffs complain are alleged violations
of G. L. c. 138, regulating the sale of alcoholic beverages.
Under that chapter and G. L. c. 6, § 44, the ABCC has
broad regulatory authority over the liquor industry in the
Commonwealth. *Universal Mach. Co.* v. *Alcoholic Bev-
erages Control Comm'n,* 301 Mass. 40, 43-44 (1938).
The powers of the licensing authorities are not limited "to
the preservation of public safety and good order." *Boston
Licensing Bd.* v. *Alcoholic Beverages Control Comm'n,*
367 Mass. 788, 795-796 (1975), and cases cited. Under
G. L. c. 138, §§ 64 and 67, the ABCC has authority to
investigate the conduct of licensees, to hold hearings on
possible violations of c. 138, and to modify, suspend,
revoke or cancel licenses. See *Miller* v. *Alcoholic Bever-
ages Control Comm'n,* 340 Mass. 33, 35 (1959). We
were informed at argument that the ABCC now has
under way an investigation and hearing concerning the
very activities which form the basis of the plaintiffs' com-
plaints. Cf. Rep. A.G., Pub. Doc. No. 12, at 94 (1966)

(opinion of the Attorney General issued Aug. 19, 1965); *Opinion of the Justices,* 368 Mass. 857, 864-865 (1975).

The power of the ABCC to enforce the provisions of c. 138 is not exclusive. Violations of those provisions are punishable by fine or imprisonment, or both. § 62. Criminal prosecutions are conducted by others as well as by the ABCC, and its regulations are enforceable only against licensees. Cf. *Revere* v. *Aucella, ante,* 138, 145 (1975). Moreover, a suit to enjoin the illegal sale of alcoholic beverages as a common nuisance may be brought by the Attorney General, the district attorney, the board or officer having control of the police, or not less than ten voters of a town or city. G. L. c. 139, §§ 16, 16A. *Jasper* v. *Michael A. Dolan, Inc.,* 355 Mass. 17, 18 (1968). *Cleary* v. *Cardullo's, Inc.,* 347 Mass. 337, 351 (1964). The ABCC has no power to prosecute civil actions to recover damages on behalf of persons aggrieved by violations of c. 138, or to seek injunctive relief on their behalf. Nor does it have power to institute civil or criminal proceedings under G. L. c. 93 or 93A.

2. *The exhaustion doctrine.* We have often recognized the doctrine that administrative remedies should be exhausted before resort to the courts. See *Gordon* v. *Hardware Mut. Cas. Co.,* 361 Mass. 582, 587-588 (1972), and cases cited; cf. *McKart* v. *United States,* 395 U.S. 185, 193-195 (1969). That doctrine is commonly applied to prevent premature interference with a pending administrative proceeding. See *East Chop Tennis Club* v. *Massachusetts Comm'n against Discrimination,* 364 Mass. 444, 447-451 (1973). In such cases it is proper to dismiss an action for injunctive or declaratory relief, and to await judicial review if and when the administrative process results in an order affecting substantial rights. The policy is similar to that precluding premature interference with a pending criminal proceeding. See *Norcisa* v. *Selectmen of Provincetown,* 368 Mass. 161, 172-173 (1975).

We have also applied the exhaustion doctrine to cases where no administrative proceeding was pending. In

such cases the doctrine is often referred to as the doctrine of "primary jurisdiction" or "prior resort." See 3 K. Davis, Administrative Law Treatise § 19.01 (1958); 2 F. Cooper, State Administrative Law 572 (1965); Comment, 7 Suffolk U.L. Rev. 124, 136 (1972). "While the requirement of exhausting administrative remedies has a somewhat different historical background than the rule of prior resort, yet the two doctrines have developed into complementary parts of a general principle which ordinarily serves to preclude judicial consideration of a question while there remains any possibility of further administrative action." 2 F. Cooper, *supra* at 572.

Where the entire controversy is within the exclusive jurisdiction of an administrative agency, the doctrine ordinarily results in dismissal of judicial proceedings begun without prior resort to the agency. Cf. *Pan American World Airways, Inc.* v. *United States,* 371 U.S. 296, 313 n.19 (1963). Where there are overlapping jurisdictions and the agency has jurisdiction of only part of the matter in controversy, it may be proper to dismiss judicial proceedings which seek only prospective relief, since the action can be reinstituted after administrative remedies have been exhausted. *Holyoke Water Power Co.* v. *Holyoke,* 349 Mass. 442, 443 n.1 (1965). See 3 K. Davis, Administrative Law Treatise § 19.07 (1958). But where damages for past conduct are sought which cannot be awarded by the agency, dismissal may give rise to serious problems in the application of the statute of limitations. In such cases the proper course may be to stay the action instead of dismissing it. *Carnation Co.* v. *Pacific Westbound Conference,* 383 U.S. 213, 222-223 (1966). Cf. *United States* v. *Michigan Nat'l Corp.,* 419 U.S. 1, 5-6 (1974); *Ricci* v. *Chicago Mercantile Exch.,* 409 U.S. 289, 302-306 (1973).

In *Gordon* v. *Hardware Mut. Cas, Co.,* 361 Mass. 582 (1972), damages were claimed, but the action was dismissed in the Superior Court, and we affirmed. We left open the question whether the agency could require the

defendant to make a rebate in the amount of damages claimed. *Id.* at 586-587. No one suggested the propriety of a stay instead of dismissal, and we did not consider that possibility. Since that decision the statute there applied, G. L. c. 93A, § 9, has been amended to insert paragraphs (6)-(8), providing that actions under § 9 are to be suspended rather than dismissed in cases where judicial action should await administrative action. St. 1973, c. 939.

Assuming, without deciding, that judicial action in the present cases should await further administrative action, we think dismissal of the actions was not the proper remedy, since a stay would accomplish the purposes of the doctrine of prior resort and would avoid possible unfair prejudice to the plaintiffs' rights. Cf. *Cleary* v. *Cardullo's, Inc.*, 347 Mass. 337, 344-345 (1964). If the defendants should seek stays, the provisions of G. L. c. 93A, § 9 (6)-(8), though not applicable to an action under § 11, provide a useful analogy.

The judgments are reversed and the cases remanded to the Superior Court for further proceedings consistent with this opinion.

*So ordered.*