DEPARTMENT OF ENVIRONMENTAL QUALITY ENGINEERING
& another[1] vs. CUMBERLAND FARMS OF
CONNECTICUT, INC. & another.[2]

Suffolk.  May 8, 1984. — October 23, 1984.

Present: GRANT, BROWN, & PERRETTA, JJ.

*Administrative Law,* Primary jurisdiction. *Wetlands Protection Act. Municipal Corporations,* Conservation commission. *Department of Environmental Quality Engineering.*

A municipal conservation commission, rather than the Superior Court or the
    Department of Environmental Quality Engineering, was the appropriate
    forum to determine in the first instance whether a particular parcel or
    portion of land was or was not "in agricultural use," as that term is used
    in G. L. c. 131, § 40, in circumstances where, after a landowner failed
    to comply with the department's enforcement order to refrain from clear-
    ing certain wetland, the department brought an action in the Superior
    Court for the limited purpose of securing the landowner's compliance
    with the administrative process and the landowner sought, in the same
    action, a judicial determination that the department lacked jurisdiction
    under § 40 to regulate its activities. [676-679]

CIVIL ACTION commenced in the Superior Court Department
on July 8, 1983.

The case was heard by *John Paul Sullivan,* J., and questions
of law were reported by him.

*Allan van Gestel* for the defendants.

*Lee L. Bishop,* Assistant Attorney General (*Stephen M.
Leonard,* Assistant Attorney General, with him) for the plain-
tiffs.

PERRETTA, J.   When the defendant Cumberland Farms of
Connecticut, Inc. (Cumberland), failed to heed an enforcement

---

[1] The Attorney General. See G. L. c. 12, §§ 3 & 11D, authorizing the
Attorney General to commence or intervene in proceedings to prevent or
remedy damage to the environment.

[2] John A. Peck, the operations manager of Cumberland.

order from the plaintiff Department of Environmental Quality Engineering (DEQE) concerning Cumberland's use of its land, see generally G. L. c. 131, § 40, as amended through St. 1979, c. 693, the DEQE brought an action in the Superior Court seeking injunctive relief. The land in question, known as the Great Cedar Swamp, is a broad wetland located along the coastal plain of southeastern Massachusetts in the towns of Halifax and Middleborough and consists of approximately 1,900 acres. At the time of commencement of the action Cumberland had almost 1,400 acres of the land under cultivation, having purchased it twelve years ago. It was preparing to cultivate the remaining 500 acres when the DEQE issued its enforcement order. Cumberland asserts that the DEQE lacks jurisdiction over the land by reason of that part of § 40, which provides that the "provisions of this section shall not apply . . . to work performed for normal maintenance or improvement of land in agricultural use." Relying upon *Murphy* v. *Administrator of the Div. of Personnel Admn.*, 377 Mass. 217, 221 (1979), the trial judge entered a judgment remanding the matter to the DEQE and, pursuant to Mass.R.Civ.P. 64, 365 Mass. 831 (1974), reported to this court the questions first, whether the 500 acres are or are not "in agricultural use," as that term is used in § 40; see also 310 Code Mass. Regs. § 10.04 (1983), at note 7, *infra*; and second, whether the municipal conservation commissions (commission),[3] the DEQE, or the Superior Court should decide that question in the first instance. We agree with the trial judge that the answer to the second question is that the first must be submitted to the appropriate administrative body, which we conclude is the commission.

I. FACTS.

We relate the facts as set out by the trial judge in his report. As of July 1, 1983, about 1,400 acres of the total nineteen hun-

---

[3] It appears from certain documents in the record appendix that because the land in question is situated within the boundaries of Halifax and Middleborough, two conservation commissions may have an interest in Cumberland's activities. Reference throughout this opinion to the "conservation commission" in the singular should be deemed to be in the plural whenever applicable.

dred acre parcel of land had been planted with feed crops. Since Cumberland purchased the property its agricultural operations on the land have proceeded in three steps. First, standing timber has been harvested and sold on a weekly basis for approximately ten months of the year. Second, the harvested land has been cleared of debris. Third, the cleared land has been prepared and planted with crops. Of the remaining 500 acres, about 250 consisted of standing (uncut) timber, and between 200 to 250 were of drained land on which timber and brush had been cut but debris not removed. About fifty acres have been cleared of stump and debris and were being prepared for planting.

Two DEQE employees inspected Cumberland's property on July 5, 1983. They saw workers, presumably employed by Cumberland, stripping vegetation, bulldozing soil, and pushing earth and tree stumps into the Great Cedar Swamp. That area of work is wetland and not currently under cultivation. Cumberland intends, however, to plant crops in the remaining portion of its nineteen hundred acre parcel of property.

The day following the inspection, the DEQE wrote to the defendant Peck and enclosed an enforcement order.[4] The letter and order advised Cumberland that the bulldozing of soil and stumps into the Great Cedar Swamp and the destruction of vegetation were in violation of § 40 and the filing requirements of 310 Code.Mass. Regs. § 10.05(3) and (4) (1983), described in part II of this opinion, *infra*. Cumberland ignored the enforcement order and continued its operations, thereby precipitating the present action.

II. SECTION 40 AND ADMINISTRATIVE PROCEDURES.

The pertinent prohibition of § 40 is that "[n]o person shall remove, fill, dredge or alter any bank, fresh water wetland, coastal wetland . . . marsh . . . or swamp . . . without filing written notice of his intention to [do] so . . . and without

_____

[4] By 310 Code Mass. Regs. § 10.08 (1983), "When the conservation commission or the Department determines that an activity is in violation of the Act [i.e., G. L. c. 131, § 40; see 310 Code Mass. Regs. § 10.01 (1983)], 310 C.M.R. 10.00 or a Final Order, the commission or the Department may issue an Enforcement Order. . ."

receiving and complying with [any] order of conditions and provided all appeal periods have elapsed." G. L. c. 131, § 40. The notice of intent is filed with the commission, with copies to the DEQE. Within twenty-one days of receipt of the notice, the commission must hold a public hearing on the proposed activity. After the hearing, should the commission determine that the land in question "is significant to . . . flood control, to storm damage prevention, to prevention of pollution, to protection of land containing shellfish, or to the protection of fisheries," then the commission "shall by written order . . . impose such conditions as will contribute to the protection of the interests described herein, and all work shall be done in accordance therewith." *Ibid.* See 310 Mass. Regs. § 10.05(4) (1983).

Section 40 further provides that "any person aggrieved" by the commission's order, including the DEQE, "may . . . request [DEQE] to determine" the significance of the land to the above-recited interests. The DEQE "shall make the determination requested and . . . shall impose such conditions as will contribute to the protection" of those interests. Any such order issued by the DEQE "shall supersede the prior order" of the commission and all work must comply with any conditions imposed by the DEQE.

As an alternative to a notice of intent, these administrative procedures may be initiated by any person by written request to the commission seeking a determination "as to whether this section is applicable to any land or work thereon." G. L. c. 131, § 40. See, e.g., *County Commrs. of Bristol* v. *Conservation Commn. of Dartmouth*, 380 Mass. 706, 707 (1980). The applicant or any aggrieved party may seek DEQE review of the commission's determination or its failure to act on the request. As to an administrative determination of the "applicability" of § 40, regulations promulgated by the DEQE prescribe a form which requires a description of the work and area. See 310 Code Mass. Regs. §§ 10.05(3)(a), and 10.99 (Form 1) (1983).

It seems evident to us that by these statutory and regulatory procedures the Legislature and the DEQE have established a comprehensive scheme of administrative action and remedies with local authorities, i.e., conservation commissions, making

the initial review "for the familiar purposes of bringing local knowledge to bear on local conditions and reducing the administrative burden on a Statewide agency." *Hamilton* v. *Conservation Commn. of Orleans,* 12 Mass. App. Ct. 359, 368 (1981).

III. AGENCY JURISDICTION.

As earlier noted, in remanding this matter to the DEQE the trial judge relied upon the doctrine of primary jurisdiction which, as explained in *Murphy* v. *Administrator of the Div. of Personnel Admn.,* 377 Mass. at 220, is applicable in cases where a plaintiff, "in the absence of pending administrative proceedings, invokes the original jurisdiction of a court to decide the merits of a controversy." When the DEQE brought its complaint seeking injunctive relief,[5] it was still open to Cumberland to file either a request for determination of applicability or a notice of intent. Instead, Cumberland has stood its ground, alleging that it is exempt from the § 40 prohibitions and, therefore, that the commission and the DEQE lack jurisdiction to regulate its activities. Thus, even though the DEQE initiated judicial proceedings, it did so for a limited purpose, to secure compliance with the administrative process (compare *St. Luke's Hosp.* v. *Labor Relations Commn.,* 320 Mass. 467, 470 [1946]), and it is Cumberland that has sought a judicial determination in the first instance on the jurisdictional issue.

The doctrine of primary jurisdiction stems from the "general principle which ordinarily serves to preclude judicial consideration of a question while there remains any possibility of further administrative action." *J. & J. Enterprises, Inc.* v. *Martignetti,* 369 Mass. 535, 540 (1976) (quoting from 2 Cooper, State Administrative Law 572 [1965]). *Boston Edison Co.* v. *Brookline Realty & Investment Corp.,* 10 Mass. App. Ct. 63, 66 (1980). Relaxation of judicial insistence upon agency partici-

---

[5] The second sentence of the twenty-third paragraph of § 40 provides: "Any court having equity jurisdiction may restrain a violation of this section and enter such orders as it deems necessary to remedy such violation upon the petition of the attorney general, the commissioner, a city or town, an owner or occupant of property which may be affected by said removal, filling, dredging or altering, or ten residents of the commonwealth under the provisions of section ten A of chapter two hundred and fourteen."

pation is rare. *Murphy* v. *Administrator of the Div. of Personnel Admn.*, 377 Mass. at 220-222.

Cumberland's argument that this case presents a rare exception to the rule is essentially as follows. Because the facts are not in dispute, the only remaining question for resolution is one of law, the interpretation of the exemption in § 40 for "work performed for normal maintenance or improvement of land in agricultural use." The answer, Cumberland argues, requires no special expertise of the commission or the DEQE, and to the extent that an agency determination is necessary before the courts will interfere, one has been made, as evidenced by the DEQE's enforcement order.

We begin by disposing of the notion that the DEQE has made a determination that Cumberland's activities are not exempt from § 40 prohibitions. Putting the matter simply, we are unwilling to conclude that the DEQE has decided a disputed critical issue with the degree of finality contemplated before judicial review appropriately may be sought.[6] The DEQE was forced to issue the enforcement order and initiate court proceedings, see notes 4 and 5, *supra,* to secure compliance with those administrative procedures, see 310 Code Mass. Regs. § 10.05 (3) or (4) (1983) (a request for determination of applicability or a notice of intent), which would bring before it all those facts necessary to make a determination in the true sense of the word.

Taking up Cumberland's contention that the facts are not in dispute, we point out that it does not necessarily follow from the existence of undisputed facts that all the facts necessary to decide the question of law are present. Compare *Kartell* v. *Blue Shield of Massachusetts, Inc.,* 384 Mass. 409, 414 (1981). Indeed, it is on this basis that the trial judge ordered the matter remanded. Acting under its rulemaking authority conferred by § 40, the DEQE has defined the term "Land in agricultural use" at 310 Code Mass. Regs. § 10.04 (1983), and set out in pertinent

---

[6] A "Final Order" is defined at 310 Code Mass. Regs. § 10.04 as "the Order issued by the Commissioner after an adjudicatory hearing or, if no request for a hearing has been filed, the Superseding Order or, if no request for a Superseding Order has been filed, the Order of Conditions." See also G. L. c. 30A, § 14.

portion in the margin.[7] Cumberland contends that its activities fall within the definition of "Land in agricultural use" in that its "agricultural activities upon the 500 acres are 'incidental' to its use of the land already planted to crop . . . in the sense that crop production within the entire parcel is a natural use, long planned by Cumberland . . . [and that] these approximately 500 acres are part of a contiguous 1,900 acre parcel of land in single ownership which is *primarily* in agricultural use" (emphasis original).

Whether Cumberland was using its land in the manner described in the italicized portions of 310 Code Mass. Regs. § 10.04 (1983) as set out below at note 7, is, in our view, a mixed question of fact and law. As discussed in part II of this opinion, the Legislature has left it to the commission and the DEQE, not the courts, to find in the first instance those facts necessary to determine whether Cumberland's land is in agricultural use and therefore, outside the regulatory authority of the commission and the DEQE. See *East Chop Tennis Club* v. *Massachusetts Commn. Against Discrimination,* 364 Mass. 444, 452 (1973). Cf. *Lahey Clinic Foundation, Inc.* v. *Health Facilities Appeals Bd.,* 376 Mass. 359, 361 (1978). Compare *Murphy* v. *Administrator of the Div. of Personnel Admn.,* 377 Mass. at 222. We are unwilling to hold that the necessary factual resolutions do not involve technical questions of fact uniquely within the expertise of the commission and the DEQE.

---

[7] *"Land in agricultural use* means land presently and primarily used in the raising of animals including, but not limited to, dairy cattle, beef cattle, poultry, sheep, swine, horses, ponies, mules, goats, bees and fur-bearing animals, *or land presently and primarily used in a related manner which is incidental thereto and represents a customary and necessary use in raising such animals.*

"Additionally, land in agricultural use means land presently and primarily used in the raising of fruits, vegetables, berries, nuts and other foods for human consumption, feed for animals, tobacco, flowers, sod, trees, nursery or greenhouse products, and ornamental plans and shrubs; or land presently and primarily used in raising forest products under a planned program to improve the quantity and quality of a continuous crop; *or land presently and primarily used in a related manner which is incidental thereto and represents a customary and necessary use in raising such products."* (Emphasis supplied.)

Compare *LaPierre* v. *Maryland Cas. Co.,* 14 Mass. App. Ct. 248, 250 (1982). Cumberland does not and could not claim that its administrative remedies are inadequate. *Id.* at 251 ("Where an administrative remedy is adequate and comprehensive, it is often reasonable to conclude that it was intended by the Legislature to be exclusive, subject to judicial review in due course").

In view of all the considerations discussed above, we see no error in the trial judge's conclusion that the matter must be remanded to the appropriate agency. For the reasons set out in part II of this opinion, we conclude that the answer to the second question reported by the trial judge is that the conservation commission is the appropriate forum to determine in the first instance "whether a particular parcel or portion of a parcel of land is or is not in 'agricultural use'." See *Hamilton* v. *Conservation Commn. of Orleans,* 12 Mass. App. Ct. at 366-368. See also 310 Code Mass. Regs. §§ 10.05(3) and (4), and 10.99, Form 4 (1983).

IV. CONCLUSION.

The trial judge reported two questions to us. We have already answered the second question and it is clear from what we have said that the conservation commission, in the first instance, must make the determination referred to in the first question.

Accordingly, the order of remand to the DEQE and the judgment are vacated. The preliminary injunction of August 12, 1983, is to continue in effect at least until the completion of appropriate proceedings before the conservation commissions of Middleborough and Halifax. The court may retain jurisdiction over the matter.

*So ordered.*