Town of Bourne *vs*. Hilda E. Austin & another.[1]

Barnstable.   April 4, 1985. — April 29, 1985.

Present: Greaney, C.J., Rose, & Grant, JJ.

*Wetlands Protection Act. Administrative Law*, Primary jurisdiction. *Municipal Corporations*, Conservation commission.

Although it would have been appropriate for a landowner who wished to repair a retaining wall located at the base of a seawall on her property to have filed a notice of intention under G. L. c. 131, § 40, with the conservation commission of the town in which the land is located, or, alternatively to have requested the commission's determination whether § 40 was applicable to the proposed repairs, in the circumstances it was also permissible for her to make the repairs, subject to the possibility that the town or the Commonwealth would take enforcement action against her. [740]

In a civil action to enforce the wetlands protection provisions of G. L. c. 131, § 40, a town failed to sustain its burden of proving by a preponderance of the evidence that a landowner's repairs to a retaining wall on her property constituted either a filling or an alteration of wetland, which would have brought the repairs within the scope of § 40 and State regulations promulgated thereunder. [740-741]

In an action seeking enforcement of G. L. c. 131, § 40, there was no basis for a town's contention, raised for the first time on appeal, that the judge should have requested a determination by the town's conservation commission as to the applicability of § 40 to the defendants' repair work. [743]

Civil action commenced in the Superior Court Department on October 5, 1981.

The case was heard by *John F. Moriarty*, J.

*Robert Sweeney Troy*, Town Counsel, for the plaintiff.

*Laurie S. Gill (Daniel O. Mahoney* with her) for the defendants.

*Gregor I. McGregor*, for Massachusetts Association of Conservation Commissions, amicus curiae, submitted a brief.

---

[1] Charles W. Austin, a son of Hilda.

*Nancy S. Marks*, Assistant Attorney General, for the Commonwealth, amicus curiae, submitted a brief.

GRANT, J. This was a complaint brought in the Superior Court under G. L. c. 231A and under the second sentence of the twenty-third paragraph of G. L. c. 131, § 40, as amended through St. 1979, c. 693,[2] by which the plaintiff town sought to enjoin the defendants from making repairs to a retaining wall located at the base of a seawall which runs along the Pocasset River side of the defendant Hilda E. Austin's property in Bourne. The theory of the complaint was that the repair work being done by the defendants constituted the filling or alteration of a bank bordering on a tidal river and that the defendants had failed to give the town's conservation commission the written notice of intention which is required by the first two sentences of § 40[3] and which triggers the proceedings leading to a commission's issuing an order of conditions.

The complaint was not filed until after the repair work had been completed. The trial judge denied a motion by the town for summary judgment which was not filed until the eve of trial.[4]

---

[2] "Any court having equity jurisdiction may restrain a violation of this section and enter such orders as it deems necessary to remedy such violation, upon the petition of . . . a city or town . . . ."

[3] So far as here material those sentences read: "No person shall remove, fill, dredge or alter any bank . . . bordering on . . . any . . . river . . . or any land subject to tidal action . . . other than in the course of maintaining, repairing or replacing, but not substantially changing or enlarging, an existing and lawfully located structure or facility used in the service of the public and used to provide electric, gas, water, telephone, telegraph and other telecommunication services, without filing written notice of his intention to so remove, fill, dredge or alter, including such plans as may be necessary to describe such proposed activity and its effect on the environment and without receiving and complying with an order of conditions and provided all appeal periods have elapsed. Said notice shall be filed . . . [with] the conservation commission . . . ."

[4] We do not consider the propriety of the order denying the motion for the reason that neither the motion nor any of the relevant papers have been reproduced in the record appendix. See *Kunen* v. *First Agricultural Natl. Bank*, 6 Mass. App. Ct. 684, 685-691 (1978). Accordingly, we do not reach the question whether a challenge to the denial of a motion for summary judgment is foreclosed once the case has been fully tried. See *Webster* v. *Kowal*, 394 Mass. 443, 445 n.3 (1985).

The judge, following a two-day trial, described the repairs as follows. "The contractor erected a simple wooden form against the seaward face of the retaining wall and poured fresh concrete behind it. As intended, the fresh concrete flowed into the crack which had opened up between the retaining wall and the seawall, and into such holes and crevices as had been created in the retaining wall itself by the action of the water. The contractor then smoothed off the surface of the freshly poured concrete and, after it had hardened, removed the wooden form."[5] Judgment was entered declaring that the defendants had not violated G. L. c. 131, § 40, "when they caused the seawall . . . to be repaired without filing a notice of intent with the [c]onservation [c]ommission of the town of Bourne." The town appealed. We consider its contentions seriatim.

1. The statute does not on its face require every landowner (or someone acting in his behalf) to file a notice of intention with the local conservation commission concerning each repair he may wish to perform in a wetland area. The words of prohibition employed at the very outset of § 40 are "remove, fill, dredge [and] alter." The word "repair" is conspicuously absent. The fact that public utilities are expressly excused by the same sentence of the statute from filing notices of intention whenever they wish to make repairs which would not "substantially chang[e] or enlarg[e] . . . existing and lawfully located structure[s] or facilit[ies]" avails the town nothing. The only effect of that language is to exclude from the operation of the statute certain repairs which would otherwise amount to removal, filling, dredging or alterations. There is nothing in what the town refers to as the "utility exception" which supports the contention that every other type of repair must necessarily amount to one of the four forbidden activities.

2. Nor is there any merit to the contention that the only permissible alternative to filing a notice of intention with a local conservation commission is the submission to it of a

---

[5] There is no contention that any of those findings is "clearly erroneous" within the meaning of Mass.R.Civ.P. 52 (a), 365 Mass. 816-817 (1974). See *Marlow* v. *New Bedford*, 369 Mass. 501, 508 (1976); *New England Canteen Serv., Inc.* v. *Ashley*, 372 Mass. 671 675 (1977).

written request under the second paragraph of § 40 for a written determination whether the section is applicable to particular proposed repairs.[6] See *County Commrs. of Bristol* v. *Conservation Commn. of Dartmouth*, 380 Mass. 706, 706-707 (1980); *Department of Environmental Quality Engr.* v. *Cumberland Farms of Conn., Inc.*, 18 Mass. App. Ct. 672, 675 (1984). The statute simply provides a second alternative to a landowner who wishes to perform some sort of work in a wetland area. There is nothing in the statute which can be tortured into a blanket requirement that every type of repair work must be preceded by either a notice of intention under the first paragraph of § 40 or a request for a determination under the second paragraph of that section.

3. It follows that there is a third alternative, which is that a landowner who believes that the repairs he wishes to make in a wetland area do not fall within the scope of the prohibitory words "[n]o person shall remove, fill, dredge or alter" can proceed to make the repairs and take his chances on whether a civil action will be brought against him under the twenty-third paragraph of § 40 or a criminal prosecution instituted under the twenty-fifth paragraph of that section. That is the course followed by the defendants in the present case. So long as the statute leaves that alternative open to the landowner, he is not to be faulted for pursuing it.

There are understandable reasons why he may choose to do so. Quite apart from the time and expense involved in the administrative process, one who submits a request for a determination whether the statute applies will, as a practical matter, have the burden of persuading the commission that the statute does not apply. If he proceeds to make the desired repairs without first approaching the commission, the town which brings an enforcement action under the twenty-third paragraph will have the burden of proving by a fair preponderance of the

---

[6] The thirteenth paragraph of § 40 provides for an appeal to the Department of Environmental Quality Engineering if the local conservation commission fails to act on any such request within twenty-one days of its submission to the commission.

evidence that the work in question amounts to one of the forbidden activities. Compare *Brotherhood of Alpha Upsilon, Inc.* v. *Zoning Bd. of Appeals of Bridgewater*, 15 Mass. App. Ct. 991, 992 (1983). And, of course, the Commonwealth will have the burden of proof beyond a reasonable doubt if a criminal prosecution is instituted.

4. We turn now to the efforts the town made below to sustain its burden of proof on the question whether the repair of the retaining wall fell within any of the prohibitions of the opening clause of § 40. So far as can be ascertained from the trial transcript and from the town's requests for findings of fact and rulings of law, it sought to establish two alternative propositions. One was grounded on the definition of the word "fill" which appeared in the regulations promulgated by the Commissioner of the Department of Environmental Quality Engineering (DEQE) under the twenty-fourth paragraph of § 40 as in effect at the time the work in this case was performed, which was in the late summer of 1981. The other proposition was grounded on designated portions of the definition of the word "alter" which appeared in those same regulations.[7]

The word "fill" was defined in 310 Code Mass. Regs. 10.02: (17) (1980) as follows: "*Fill* shall include the placing of any material that raises, either temporarily or permanently, the elevation of any area subject to [§ 40]" (emphasis in original). The difficulty with attempting to utilize that definition is the lack of any finding by the judge that the work performed by the defendants raised the elevation of any part of the retaining wall. The evidence on that point was conflicting (even the chairman of the conservation commission appeared confused), and, in the absence (as here) of a motion under Mass.R.Civ.P. 52(b), 365 Mass. 817 (1974), to amend the findings or for

---

[7] The purposes of those regulations were stated in 310 Code Mass. Regs. 10.01: (2) (1980) as follows: "(a) These regulations are promulgated to create uniformity of process and to help clarify the provisions of [G. L. c. 131, § 40] by establishing standard definitions and procedures as required by [§ 40]. (b) The regulations shall complement [§ 40] and have the force of law after they have been formally published by the Secretary of the Commonwealth." The regulations contained no definition of the word "repair."

additional findings, we will not supply the missing finding ourselves. See *Building Inspector of Lancaster* v. *Sanderson,* 372 Mass. 157, 160-161, 163-164 (1977).

The portions of the definition of the word "alter" which were relied on were found in 310 Code Mass. Regs. 10.02: (3) (d) and (e) (1980). Subsection (d), when read with the preamble of (3), defined *"Alter"* (emphasis in original) to include "[t]he dumping, discharging or filling with any materials which could degrade the water quality." See *Rutland* v. *Fife,* 385 Mass. 1010 (1982). Prescinding from the difficulty already encountered with the word "fill," we join the judge in being unable to discover any evidence that fresh concrete "could degrade the water quality."

The further definition of "alter" found in (e) of the above regulation included "[t]he driving of pilings or the erection of buildings or structures of any kind." The word "structure" was not defined in § 40 or in any of the regulations, but when that word is placed in juxtaposition with the words "pilings" and "buildings" (neither of which was defined) there emerges a connotation of permanence not ordinarily associated with wooden forms which are customarily removed as soon as the concrete hardens. We are not obliged to give "alter" a strict construction, such as would be appropriate if we were dealing with one of the express exceptions from the scope of § 40 which are set out in its eighteenth paragraph. See *Department of Environmental Quality Engr.* v. *Hingham,* 15 Mass. App. Ct. 409, 412 (1983); *Department of Environmental Quality Engr.* v. *Cumberland Farms of Conn., Inc.,* 18 Mass. App. Ct. at 673. Even so, we are not persuaded that the simple repairs described in the judge's findings constituted an "alter[ation]" within the meaning of § 40.[8]

5. We deal finally with the notion, raised here for the first time, that the judge should have referred to the conservation commission, for an initial determination by it, the whole question

---

[8] We are told in the brief of one of the amici curiae that the regulatory definition of "alter" was changed by 310 Code Mass. Regs. 10.04 (1983) to read: *"Alter* means to change the condition of any Area Subject to Protection Under [G. L. c. 131, § 40]" (emphasis in original).

whether § 40 had any application to the repairs effected by the defendants. That notion is contrary not only to the prayers of the complaint, which sought declaratory as well as injunctive relief, but also to the theory on which the case was tried. The notion was undoubtedly inspired by the release, pending the appeal in this case, of our decision in *Department of Environmental Quality Engr.* v. *Cumberland Farms of Conn., Inc.,* *supra,* in which the work being performed by the defendant clearly constituted an "alteration" of a wetland and the substantive question was whether the work fell within the "agricultural use" exception found in the eighteenth paragraph of § 40 (18 Mass. App. Ct. at 673). We were careful to point out that the DEQE was not asking the court to decide that question but had brought the action for the limited purpose of securing compliance with the administrative process (18 Mass. App. Ct. at 672-673). We held that the applicability of the statute should be determined in the first instance by the local conservation commissions rather than by the DEQE. There is nothing in that case or in *Hamilton* v. *Conservation Commission of Orleans,* 12 Mass. App. Ct. 359, 368 (1981), which supports the plaintiff's newfound contention.

*Judgment affirmed.*