Wexler, James H., J.
This matter came before the Court on an appeal filed by the plaintiff, Catharine Mizhir, as Trustee of Three M. Realty Trust (“Trust”) pursuant to G.L.c. 249, §4, challenging an enforcement order issued by the members of the Winchendon Conservation Commission (“Commission”) pursuant to the Massachusetts Wetland Protection Act (“Act”), G.L.c. 131, §40. The plaintiff moves for a judgment quashing that part of the enforcement order requiring the Trust to file a Notice of Intent with the Commission. The defendants oppose the plaintiffs motion and have moved that the court dismiss the plaintiffs complaint.

BACKGROUND

Three M. Realty Trust owns land off of Route 12 within the Town of Winchendon, Massachusetts. The property is shown on a February 13, 1995 plan entitled, “Grading Plan” prepared by the Trowbridge Engineering Company. The plan shows wetland resource areas and buffer zones at the southwest, northwest, north and east areas of the property.
Having filed a determination of applicability request on March 27, 1995, the plaintiff notified the Winchendon Conservation Commission of her plan to remove sand and gravel from the property, including areas located within the wetland protection and buffer zone areas. The Commission, following a hearing on April 11, 1995, in a letter dated April 12, 1995, determined that the work described “is within the Buffer Zone as defined in the regulations, and will alter an area subject to protection under the act.” The *722 Commission stated that the work “require[d] the filing of a Notice of Intent including calculations as requested at the 11 April Hearing.”
During a meeting with the Commission on April 25, 1995, the plaintiff represented that the Trust was “only proposing to remove gravel outside of the 100-foot buffer zone.” The plaintiff argued that a notice of intent was therefore not required. However, the plaintiff did not file any document or plan to withdraw or modify the determination of applicability.
In a May 2, 1995 memorandum to the Town Manager, Board of Selectman, and Zoning Board of Appeals (ZBA), the Commission noted that notwithstanding the plaintiffs representations during the April 25, 1995 hearing, the plan on file showed that excavation work was contemplated for areas within the protected areas.
The Commission noted that:
Three M. Realty Trust assured the Commission that the [Notice of Intent] would be filed in time for the 25 April 1995 hearing. On, or shortly before 25 April, the Commission was informed by Attorney Joseph Mizhir that 3M [sic] Realty Trust would not be submitting a NOI because they were not (contrary to their submitted plan) intending to work within 100 feet of the wetlands shown on the plan. The plan submitted with their original “Request” indicated work as close as 30 feet from the wetlands. As the applicant said to the Commission on 4/25/95, he would not be working to the plan submitted, the Commission does not now have a plan showing the new extent of excavation and since no NOI was submitted we have not been able to issue an Order of Conditions to prevent potential impacts to adjacent wetlands. There is continued concern of the Commission that the project could very likely cause a negative impact to the wetland to the rear of the project ... If the applicant does proceed and alters any of the wetland areas including but not limited to the wetland along the access road, the Commission will be required as set forth in [G.L.C. 131, §40], to issue an Enforcement Order for the violation.
At its meeting on May 31, 1995, the Winchendon Board of Selectman voted to issue a permit to the plaintiff to:
[OJperate a commercial sand and gravel pit on property located on Spring Street (Route 12); this permit is issued subject to the following expressed conditions:
(1) That Three M. Realty Trust, within thirty (30) days of the issuance of said permit, provide the Winchendon Conservation Commission with an amended plan that specifically delineates a distance of one hundred (100) feet from the edge of all established buffer zones . . . and written assurance that when activities at the gravel pit begin at the said one hundred-foot delineation line from the buffer zone, Three M. Realty Trust shall file a Request for Determination of Applicability, fully documenting the measures to be taken. If subsequently required by the Winchendon Conservation Commission, a Notice of Intent will be filed . . .
(3) The Three M. Realty Trust shall reasonably allow members of the Zoning Board of Appeals, or their designee, and/or the members of the Conservation Commission or their designee, to conduct an official inspection of the site to determine compliance with [G.L.c. 131, §40] or any permit issued from the Town of Winchendon.
Six months later, in a November 21, 1995 letter, Winchendon’s Town Manager Richard S. Lak advised the plaintiff that:
[A]s of this date, the Three M. RealtyTrust has failed to comply with two (2) expressed conditions of a permit signed by the Winchendon Board of Selectman . . . issued July 21, 1995 to said Three M. Really Trust regarding operations of its sand and gravel pit on Spring Street (Route 12), Winchendon, Massachusetts.
First Violation: Three M. Realty Trust has failed to provide the Winchendon Conservation Commission with an amended site plan as specifically required by Condition One (1) of said permit.
In a letter dated December 13, 1995, the Commission notified the Chief Enforcement Officer of the Massachusetts Department of Environmental Protection (“DEP”) of the plaintiffs violations of the Wetlands Act. The letter stated:
3M [sic] Realty Trust of Winchendon is denying the Winchendon Conservation Commission permission to check the site of their gravel operation on Spring Street (Rt 12) in violation of their permit to operate ... In addition to the permit violations that impact the Wetlands Protection Act, Commission members and their agent . . . have observed alterations in, and adjacent to the access road on the site . . . this road had been experiencing noticeable flooding. The access road is immediately adjacent to a wetland, well within the 100-foot buffer zone ... A “positive” Determination of Applicability had been voted by the Commission at the [April 11,1995] meeting and a Notice of Intent was requested. Since that time 3M Realty Trust has refused to file. However, the Board of Selectmen permit . . . assurred [sic] the Commission of a revised plan (never submitted) and inspection rights (now denied).
The DEP issued Enforcement Order UAO-CE-96-6003 on May 5, 1996 based upon an agent of the DEP visiting the property on May 4, 1996, and observing:
[S]oil from the west side of the access road [was] eroding and causing sedimentation deposit and siltation to the Wetland . . . Clearing of trees and grading activities in the buffer zone of the wetlands *723 east of the access road and along the wetlands northeast of the property.
The DEP had determined that:
[T]he activity described ... is in violation of the Wetlands Protection Act, G.L.c. 131, §40 and the Regulations promulgated thereunder pursuant thereto 310 CMR 10.00, because . . . said activity is being conducted without a valid Order of Conditions or a “Determination”: [failure to control erosion of soils at access road has resulted in unauthorized filling and degrading of Wetland; [and] [flailure to control cutting activities in buffer zone has resulted in slash in wetland.
The Enforcement Order also directed that the plaintiff:
[S]hall immediately cease and desist from further activity affecting the wetland portion of this property . . . take every reasonable step to prevent further violations of the act; [and the] [sjlope of access road (west side) must be stabilized and prevented from eroding into wetland adjacent to Ladeau property. Wetlands should be re-flagged or protected by construction fence barrier to avoid future encroachments. Pea stone dikes should be constructed across trenches draining to wetland from access road. Work to be completed within 45 days of the date of this order.[3]
In a letter dated March 20, 2003, the ZBA invited the Commission to comment on the review of the special permit issued to the Trust in 1995 because:
[T]wo of the conditions relate to [their] board in particular. The first condition states that erosion control be per the Conservation Commission specifications. The second condition states that the project meets all Conservation Commission rules and regulations before commencing operations.
The ZBA requested that the Commission provide “any information regarding the permit holder’s compliance and/or non-compliance with these conditions or any other conditions bearing the next hearing date of April 2, 2003.”
The Commission responded with a letter dated March 31, 2003. The Commission opined wrote:
[T]he plan that 3M [sic] initially submitted with their “Request for Determination of Applicability” clearly indicates work to be accomplished in the buffer zones and the Commission has reason to believe that excavation has indeed already taken place within the buffer zones.
It is the Commission’s opinion that, had 3M [sic] Realty Trust initially submitted the Notice of Intent required under the law, much of the dissension, controversy and legal action regarding the gravel operations could have been avoided.
It is the Commission’s opinion that a new survey plan be completed by 3M’s [sic] engineer plotting the present extent of work on the site so that they may check the site and compare it with their initial plan. It should also be mentioned there are no “reclamation conditions” for the site since these would have been included in the “Orders and Conditions” issued for a “Notice of Intent.”
The hearings on this special permit were held on March 19, April 2, May 7, May 13, and May 20, 2003. In the Detailed Record/Decision of the Special Permit dated May 22, 2003, the ZBA voted to modify the conditions of the 1995 permit and specifically required:
1. That erosion control be per the Conservation Commission specifications.
2. That the project meet all Conservation Commission rules and regulations commencing operations. The project will undertake corrective action as per Conservation Commission report which will issue following assessment and review of their May 12, 2003 site visit.
3. That the project meet all Board of Health rules and regulations before commencing.
4. The banks be sloped 2 to 1 to the front or as deemed safe by the building inspector.
5. Hours of operation shall be posted as 6 a.m.- 5 p.m. Monday - Friday and 8 a.m. - 12 noon on Saturday.
6. That any loam from the site remain on site and be spread for closure. If there is not enough loam, clay based hydro seeding must take place.
7. That a 100 foot natural buffer be left on any side that abuts a residential zone and no buffer on any side that abuts an industrial zone (as per the Winchendon Zoning Bylaws). Not that the northern property line of the site abuts an R1 zone and that a 100-foot natural buffer must be maintained along this line.
8. Any gravel processing that is done must be done between the hours of 8 a.m. - 5 p.m. Monday - Friday and 8 a.m. - 12 noon on Saturday and that any processing be done on the easterly side of the property.
9. No performance bond is required.
10. That these conditions be subject to review in 5 years or at the [ZBA’s] discretion.
The plaintiff did not appeal the 2003 special permit. On June 3, 2003, the Commission issued an “initial assessment” report of the locus based upon a May 13, 2003 site inspection. The Commission ordered the plaintiff to file a plan to enable the Commission’s “final assessment" of the site containing the following information:
1. Parcel boundaries shall be marked on the site and shown on the plan.
2. Wetlands shall be identified, classified, flagged and shown on the plan.
*724 3. The 100-foot buffer zone around each wetland shall be flagged and shown depicted on the plan.
4. Erosion control (staked hay bales) shall be installed around each wetland and depicted on the plan.
5. The construction debris shall be removed (off site) from within the 100-foot buffer zone around the easternmost wetland.
6. The plan shall show existing topographic contours.
The letter indicated that the plaintiff further stated:
As stated on the ZBA “Notice of Decision” dated 22 May 2003, “The project will undertake corrective action as per Conservation Commission which will issue following assessment and review of their May 12, 2003 site visit.”
The plaintiff responded to the Commission’s report by writing to the ZBA on June 10, 2003. The plaintiff disputed her obligation to:
[S]ubmit a detail plan of the property when there is absolutely no basis for any such requirement. As [I] had mentioned to the ZBA, and the ZBA agreed, there is no requirement that a plan be submitted, and there is no reason for a plan to be submitted . . . The Conservation Commission has no jurisdiction over this project. There is no work being proposed or being performed in any protected area. Therefore, the Conservation Commission should not even be involved in this project.
The plaintiff failed to submit any plan to the Commission. By a letter dated August 5, 2003, the Commission notified the ZBA of the plaintiffs non-compliance and requested a review of the Special Zoning Board of Appeals Permit. On August 7, 2003, the Board advised the Commission that:
[I]f the Conservation Commission wishes further action by 3M Realty Trust, [I] would suggest they initiate [their] own proceedings and not under the guise of the ZBA’s special permit.
The Commission issued the October 15, 2003 enforcement order to the Trust for violations of sand and gravel operations on Spring Street (RT 12), Winchendon, Massachusetts. Under the “Extent and Type of Activity” of the violation, the Commission stated:
On 12 April 1995 a “Positive Determination of Applicability” was voted on by the Commission for Three M. Realty Trust to submit a Notice of Intent (NOI) incident to the subject property. Under the provisions of MGL Ch 131 s40 (Mass. Wetlands Act) [sic] no NOI was ever submitted nor was the decision of the Con. Com. ever appealed. On 13 May 2003 a site check was allowed by Three M. Realty incident to review of a Winchendon ZBA Special Permit containing Con. Com. stipulations. Comm’s’r Landanno, Rice and Bearse walked the site. Their observations were that 1.) Critical parcel boundaries were not marked in order to determine the location of a large, possibly obliterated, wetland previously shown on the plan submitted by Three M. Realty Trust with their “Request for Determination of Applicability” on 27 March 1995; 2.) All of the wetlands shown on that plan were not flagged; 3.) Erosion control was still not evident around several wetlands; 4.) Breaks (openings) were observed in the access road berms ordered by DEP Enforcement Order dated May 9, 1996; and 5.) Construction debris was observed in the Buffer Zone of the easternmost wetland. The above concerns were additionally stated in a 3 June 2003 Con. Com. letter to Three M. Realty Trust in conjunction with review of a Winchendon ZBA Special Permit containing Con. Com. Requirements to be satisfied prior to approval of that permit. These important matters remain unresolved and the Con. Com. is again requesting a Notice of Intent addressing same as expeditiously as possible.
The issuing authority hereby orders . . . [t]he property owner, his agents, permittees, and all other shall immediately cease and desist from the further activity affecting the Buffer Zone and/or wetland resource areas on this property. Three M. Realty Trust Engineer to submit and complete the attached Notice of Intent. The completed application and plans for all proposed work as required by the Act and Regulations shall be filed with the Issuing Authority on or before 12 November 2003. The property owner shall take the following action to prevent further violations of the Act: [sjubmit NOI with plan.
On October 15, 2003, the ZBA sent a letter to the Trust regarding the special permit recognizing the Commission’s jurisdiction of the property and activity undertaken thereon:
Any activities within 100’ of any wetlands on the site must be reviewed by the Conservation Commission. There is an apparent discrepancy between the location of the wetlands on the initial plan submitted when the original Special Permit was issued (March 15, 1995) and the current location of the wetlands. This is an issue outside the scope of the ZBA’s jurisdiction but it is an issue that must be resolved with the Conservation Commission (Condition 2 of the May 22, 2003 revisions to the Special Permit).
On October 24, 2003, the plaintiff filed a complaint with this Court challenging the Commission’s Enforcement Order on April 14, 2005.

DISCUSSION

The plaintiff appeals from the issuance of an Enforcement Order by the Commission under a writ of certiorari, pursuant to G.L.c. 294, §4. In a review under certiorari, the Court may correct, “substantial errors of law, apparent on the record” that have adversely *725 affected “material rights” of the plaintiff or the real interests of the general public. Sheriff of Plymouth Cty. v. Plymouth Cty. Pers. Bd., 440 Mass. 708, 802 (2004); FIC Homes of Blackstone, Inc. v. Conservation Commission of Blackstone, 41 Mass.App.Ct. 681, 684 (1996); quoting Commissioner of Rev. v. Lawrence, 379 Mass. 205, 208 (1979).
The Court must determine whether the Commission’s actions were arbitrary and capricious and erroneous as a matter of law. Carney v. Springfield, 403 Mass. 604, 605 (1988). At all times, the petitioner retains the burden to establish all the material allegations of the petition. Gloucester v. Civil Service Com., 408 Mass. 292 (1990). The Court’s review is restricted to the record; extraneous information may not be introduced as evidence in certiorari proceedings. Id.
The Wetlands Protection Act sets forth a public review and decision-making process by which activities affecting areas subject to the protection under the Act are regulated in order to protect the public water supply and ground water supply, flood control, storm damage prevention, prevention of pollution, and protection of fisheries, land containing shellfish and wildlife habitat.
G.L.c. 131, §40; 310 CMR 10.00. G.L.c. 131, §40, in pertinent part states:
No person shall remove, fill, dredge or alter any bank, river front area, fresh water wetland, coastal wetland, beach, dune, flat, marsh, meadow or swamp bordering on the ocean or on any estuary, creek, river, stream, pond, or lake, or any land under said waters other than in the course of maintaining, repairing or replacing ... an existing and lawfully litigated structure or facility . . . without filing written notice of his intention to so remove, fill, dredge or alter, including such plans as may be necessary to describe such proposed activity and its effect on the environment and without receiving and complying with an order of conditions and provided all appeal periods have elapsed. Said notice shall be filed ... to the conservation commission or its authorized representative.
Provisions of the Code of Massachusetts Regulations promulgated under the Wetlands Act by the Commissioner of the Department of Environment Protection (“Department” or “DEP”) further define and clarify this process by establishing standard definitions and uniform procedures by which conservation commissions and the Department may cany out their responsibilities under G.L.c. 131, §40; 310 CMR 10.00.
The Conservation Commission and the Department of Environmental Qualify Engineering (DEQE) have jurisdiction over the use of wetlands.[4] Corcoran v. Planning Bd. of Sudbury, 406 Mass. 248, 251 (1989); see G.L.c. 131, §40; 310 CMR 10.55(4)(b).
A party may initiate the Wetlands Act administrative procedures by written request to the Commission seeking a determination “as to whether this section is applicable to any land or work thereon.” Dept of Environmental Quality Ertg’g. v. Cumberland Farms of Conn., Inc., 18 Mass.App.Ct. 672, 675 (1984). The plaintiff filed a written request seeking an applicability determination and did not appeal the Commission’s 1995 determination that G.L.c. 131, §40, applied to the plaintiffs proposal as filed to remove sand and gravel from within 100 feet of the wetlands area on the property. The Commission’s positive determination triggered the plaintiffs obligation to file a notice of intent. See Cumberland Farms, 18 Mass.App.Ct. at 675. While the plaintiff alleges that the proposal was abandoned, the property and activities undertaken were no longer subject to G.L.c. 131, §40, she did not withdraw or seek to modify the determination of applicability.
In the Commission’s May 2, 1995 letter to the Town Manager, Board, and ZBA and in the December 13, 1995 letter to the DEP, the Commission made specific findings supporting the validity of its exercise of authority. The Commission determined:
[T]hat sufficient protection for the wetlands on the property had not been shown on the plan since it was clearly showed propose excavation within 100 feet of the wetlands. Evidence was also presented that the access road from RT 12 had previously been flooded over, was bordering a wetland and might possibly be within Isolated Land SubjectTo Flooding (ILSF). Concern was also expressed that this previous flooding might be exacerbated by the proposed radical change in topography (elimination of Whitney Hill) shown on the plan which would substantially increase the initial drainage area contributing runoff to the suspected ILSF. It was evident to the Commission, and voted, that a Positive Determination requiring a more comprehensive Notice of Intent (NOI) would be necessary ... On or shortly before 25 April the Commission was informed . . . that 3M Realty Trust would not be submitting a NOI because they were not (contrary to their submitted plan) intending to work within 100 feet of the wetlands shown on the plan ... As the applicant said to the Commission on 4/25/95, he would not be working to the plan showing the new extent of excavation and since no NOI was submitted we have not been able to issue an Order of Conditions to prevent potential impacts to adjacent wetlands. There is a continued concern of the Commission that the project could very likely cause a negative impact to the wetland to the rear of the project... For these reasons the Commission cannot approve the project as verbally amended. If the applicant does proceed and alters any of the wetland areas including but not limited to the wetland along the access road, the Commission will be required as set forth in Ch. 131-40 MGL. To issue an Enforcement Order for the violation of Ch. 131-40 MGL.
The Commission also determined that the plaintiffs alterations to the access road and permit violations *726 impacted the area subject to the Wetlands Protection Act.[5] The Commission properly responded to the plaintiffs jurisdictional objection. See Wilczewski v. Dept. of EnvL Quality Eng’g., 404 Mass. 787, 789-94 (1989) (agency faced with contention that it is acting beyond its jurisdiction has the right and should have the opportunity to ascertain the facts and determine the jurisdictional issue for itself); Bourne v. Austin, 19 Mass.App.Ct. 738, 744 (1985) (the applicability of the [wetlands protection] statute should be determined in the first instance by the local conservation commissions).
The plaintiff had the right to appeal that decision. See G.L.c. 131, §40; see Cumberland Farms, 18 Mass.App.Ct. at 675 (the applicant or any aggrieved party may seek DEQE review of the Commission’s administrative determination of the “applicability” of G.L.c. 131, §40). Faced with a lawful order, the plaintiff had to comply with the order or appeal; she did neither.
The Wetlands Protection Act provides that no person may interfere with wetlands without filing a notice of intention to do so with the local conservation commission and establishes a system of review by the Commission and DEQE. A party is required to file a notice of intention to remove, dredge, or alter with the local commission. A party must comply with an order of conditions from the Commission before the party may engage in activities on wetlands.
After the local commission receives a notice of intent, it has .twenty-one days to hold a public hearing. 310 CMR 10.05(5). And after the public hearing, the Commission has twenty-one days to determine whether the proposed project is “significant to one or more of the interests” described in the statute and issue an order of conditions to ensure that the project complies with performance standards set out in its regulations. 310 CMR 10.05(6). The Commission may prohibit work if the information submitted does not sufficiently describe the site, the work, or the effect that the work will have on the protected interests. 310 CMR 10.05(6) (c).[6]
At no time did the plaintiff appeal to the DEP for a de novo review and adjudicatory hearing to contest the Commission’s assertion of jurisdiction over the locus. See 310 CMR 10.05(7)(a), (j). Nor did she seek judicial review under G.L.c. 30A, §14 for any adverse DEP determination.[7]
The plaintiffs jurisdictional argument was no longer viable after her failure to exhaust all administrative remedies with respect to the Commission’s Positive Determination of Applicability and Order to file a Notice of Intent, and this Court lacks jurisdiction to entertain this matter. See Lovequist, 379 Mass, at 15; Carney, 403 Mass, at 604 (actionunder G.L.c. 249, §4 lies only where petitioner has exhausted all administrative remedies).
The plaintiff lost the opportunity to appeal to the DEP when she failed to appeal the Commission’s Positive Determination of Applicability and Order to File a Notice of Intent to the DEP within ten days as prescribed by the Act. See G.L.c. 131, §40. Having foregone her opportunity to do so, Three M. Realty Trust is precluded from re-litigating her jurisdictional contention and the plaintiffs petition must be dismissed. See Conservation Commission of Falmouth v. Pacheco, 49 Mass.App.Ct. 737, 741 (2000).

ORDER

Based upon the foregoing, the plaintiffs motion for judgment on the pleadings is DENIED. Judgment is now issued in favor of the Winchendon Conservation Commission and the plaintiffs complaint is hereby DISMISSED.

The Court is not aware of whether the plaintiff complied with the DEP’s Enforcement Order and conditions contained therein, however there is nothing in the records indicating otherwise.

The DEQE is now the Department of Environmental Protection (DEP). DeGrace v. Conservation Comm. of Harwich, 31 Mass.App.Ct. 132, 137 n.4 (1991).

The Commission indicated in the December 13, 1995 letter that, despite the specific condition contained within the 1996 Permit issued by the Board, the plaintiff refused the Commission and its agents access to the locus to inspect the proposed gravel operation.

After the commission issues an order of conditions either prohibiting or conditioning the work, a person aggrieved may, within ten days, request that the DEP determine whether the area on which the proposed work is to be done is significant to the interests protected under the Act. G.L.c. 131, §40A. Upon receipt of such request, the DEP shall issue its determination by written order within seventy days. Id. Such order shall supersede the prior order of the local conservation commission and all work should be done in accordance therewith. Wilczewski, 404 Mass. at 789-92. Any aggrieved persons entitled to request a superseding order, such as the plaintiff, may request an adjudicatory hearing. 310 CMR 10.05(7)(j). The DEP must then conduct a formal hearing at which all parties may present “any information necessary or useful to a proper and complete review of the proposed activity.” 310 CMR 10.05(7)(i). Once the DEP has issued its final order following an adjudicatory hearing, any person still aggrieved by the agency’s final order is then entitled to judicial review pursuant to the Administrative Procedure Act, G.L.c. 30A, §14. Lovequist v. Consewation Commission of Dennis, 379 Mass. 7, 15 (1979).
The plaintiff has a right to request an adjudicatory hearing. 310 CMR 10.05(7)(j); G.L.c. 30A, §14. The DEP’s final and superceding order is subject to judicial review. The doctrine of primary jurisdiction stems from the “general principle which ordinarily serves to preclude judicial consideration of a question while there remains any possibility of further administrative action.” J.&J. Enterprises, Inc. v. Martignetti, 369 Mass. 535, 540 (1976).

The Court notes that the DEP issued enforcement order UAO-CE-96-6003 upon the Commission’s request, not upon an appeal of the Commission’s actions by the plaintiff. Moreover, the plaintiff did not seek judicial review of this enforcement order, as was her right under G.L.c. 30A, §14.