ARMAND LAPIERRE vs. MARYLAND CASUALTY COMPANY
& another.[1]

Suffolk.    March 11, 1982. — July 29, 1982.

Present: GRANT, CUTTER, & ARMSTRONG, JJ.

*Jurisdiction*, Primary jurisdiction. *Administrative Law*, Exhaustion of
remedies. *Insurance*, Cancellation.

A proceeding brought by an insured seeking damages for breach of con-
tract arising from a dispute concerning the cancellation of his motor
vehicle liability policy for alleged nonpayment of premium was prop-
erly commenced in court without prior administrative proceedings
pursuant to G. L. c. 175, §§ 113A and 113D. [249-253]

CIVIL ACTION commenced in the Superior Court on March
16, 1976.

The case was heard by *Pierce*, J., on motion for summary
judgment.

*J. Owen Todd* (*James R. Gomes* with him) for the plain-
tiff.

*Gael Mahony* (*Suzanne E. Durrell* with him) for Mary-
land Casualty Company.

*Thomas P. Crotty* for Richard Reinbold.

ARMSTRONG, J.  The plaintiff, who was engaged in a truck-
ing business under the name L & A Enterprises, had a fleet
of vehicles insured by the defendant Maryland Casualty
Company (insurer).  On August 19, 1975, the insurer sent a
statutory notice of cancellation in conformity with the pro-
visions of G. L. c. 175, § 113A(2), as then in effect.  The
reason given was nonpayment of premium, and the amount
claimed to be due was $14,129.  The effective date of can-
cellation was stated to be September 12, 1975, and the notice

---

[1] Richard Reinbold, doing business as R. A. Reinbold Insurance Agency.

said that the cancellation was to become effective at 12:01 A.M. on that date. The complaint stated that on that date, which was a Friday, the plaintiff went to the office of the defendant Reinbold, doing business as R.A. Reinbold Insurance Agency, and worked out an agreement whereby cancellation would be stopped if the plaintiff paid $10,000 on the following Monday and one third of the $4,129 balance in each of the three succeeding months, October, November and December, so that by the end of the year no balance would be owed. Reinbold, according to the plaintiff, confirmed this arrangement with the insurer; and on Monday morning the plaintiff delivered and Reinbold accepted the agreed-upon $10,000. Despite the agreement, the plaintiff claimed, the insurer did not terminate the cancellation procedure, as a result of which the plaintiff lost his trucking contract with the United States Postal Service and in turn lost his trucks when he defaulted on bank financing agreements. The plaintiff's claim is for damages.

The defendants filed motions for dismissal[2] based on lack of jurisdiction, an absence of consideration to bind the alleged promise not to cancel, and the purported invalidity of an oral (as contrasted with written) agreement of the type alleged. The judge, having apparently considered various affidavits, depositions, and answers to interrogatories (most of which material has not been reproduced in the appendix), ordered the entry of judgment for the defendants under Mass.R.Civ.P. 56, 365 Mass. 824 (1974), based on the jurisdictional ground. The case is here on the plaintiff's appeal from the ensuing judgment.

The view adopted by the judge was that G. L. c. 175, §§ 113A and 113D, give the Commissioner of Insurance jurisdiction to hear and resolve disputes concerning the cancellation of motor vehicle liability policies or bonds and that, although the administrative remedy is not stated to be ex-

---

[2] Reinbold's motion is styled "for directed verdict" and the insurer's "for involuntary dismissal." The judge treated both as motions for summary judgment under Mass.R.Civ.P. 56(c), 365 Mass. 824 (1974).

clusive, the doctrine of primary jurisdiction or prior resort essentially makes it so. The primary jurisdiction doctrine is explained in *Gordon* v. *Hardware Mut. Cas. Co.*, 361 Mass. 582, 586-588 (1972); *J & J Enterprises, Inc.* v. *Martignetti*, 369 Mass. 535, 539-541 (1976); *Murphy* v. *Administrator of the Div. of Personnel Admn.*, 377 Mass. 217, 220-222 (1979); and *Nelson* v. *Blue Shield of Mass., Inc.*, 377 Mass. 746, 752-755 (1979). The recurrent themes that underlie application of the doctrine are "the promotion of uniformity and consistency in the regulation of business entrusted to a particular agency" and "reliance on an agency's special expertise, especially with respect to issues involving technical questions of fact." *Kartell* v. *Blue Shield of Mass., Inc.*, 384 Mass. 409, 413, 414 (1981). The *Gordon* and *Nelson* cases illustrate the themes: in both, individuals sought relief against insurers for allegedly unfair and deceptive trade practices under G. L. c. 93A, and in both the Supreme Judicial Court held that the determination of unfair and deceptive practices in the insurance business should come in the first instance from the Commissioner, who is charged by statute with administration and enforcement of the comprehensive statutory and regulatory framework, including G. L. c. 176D, governing the industry. See the *Gordon* case, 361 Mass. at 584-585; the *Nelson* case, 377 Mass. at 753. By contrast, the doctrine is not applied "when the issue in controversy turns on questions of law which have not been committed to agency discretion." *Murphy* v. *Administrator of the Div. of Personnel Admn.*, 377 Mass. at 221. None of the matters at issue in this case — whether a promise was made and broken, whether it was supported by consideration, whether Reinbold acted as agent for the insurer in making (allegedly) the promise, the extent of damages, if any — seems peculiarly within the specialized expertise of the Commissioner. Indeed, one might justifiably take the position that they lie within the specialized expertise of courts, straightforward breach of contract claims being part of a court's daily routine.

Another recurrent theme in primary jurisdiction cases concerns the adequacy of administrative remedies. See, e.g., *Boston Edison Co.* v. *Selectmen of Concord*, 355 Mass. 79, 84-85 (1968); *Gordon* v. *Hardware Mut. Cas. Co.*, 361 Mass. at 586; *Ouellette* v. *Building Inspector of Quincy*, 362 Mass. 272, 277 (1972); *Ciszewski* v. *Industrial Acc. Bd.*, 367 Mass. 135, 141 (1975); See also *Jordan Marsh Co.* v. *Labor Relations Commn.*, 312 Mass. 597, 599, 601-602 (1942); *Ullian* v. *Registrar of Motor Vehicles*, 325 Mass. 197, 198-200 (1950). Where an administrative remedy is adequate and comprehensive, it is often reasonable to conclude that it was intended by the Legislature to be exclusive, subject to judicial review in due course. Where the administrative remedy is inadequate, it is normally not assumed that it was intended to be exclusive, although in some cases judicial proceedings may be stayed to permit the agency to bring its specialized expertise to bear on so much of the controversy as the statute commits to it. See *J & J Enterprises, Inc.* v. *Martignetti*, 369 Mass. at 540; *Lowell Gas Co.* v. *Attorney Gen.*, 377 Mass. 37, 45-46 (1979); *Nelson* v. *Blue Shield of Mass., Inc.*, 377 Mass. at 754-755; *Boston Edison Co.* v. *Brookline Realty & Inv. Corp.*, 10 Mass. App. Ct. 63, 67 (1980).

The administrative remedies applicable to claims of wrongful cancellation are two-fold. Under G. L. c. 175, § 113D, first-third pars., a person aggrieved by the issuance of a twenty-day written notice of cancellation may file a complaint with the Commissioner, who is required within five days to convene the Board of Appeal on Motor Vehicle Liability Policies and Bonds to hear the complaint. The pendency of the complaint stays the cancellation. Under § 113D, ninth par., a person aggrieved by the cancellation of a policy may file a complaint with the Commissioner within ten days thereafter. A postcancellation complaint is subject to the same procedural provisions that apply to precancellation complaints, except that a postcancellation complaint does not stay the operation of the cancellation. If the board rules in favor of the complainant, it is required to specify a date for reinstatement of the policy, which date

"shall not be earlier than the date on which the written memorandum of the finding and order [of the board] is filed in the office of the commissioner." G. L. c. 175, § 113D, ninth par., inserted by St. 1933, c. 119, § 3. Section 113D makes no mention of money damages.

We think it is reasonably clear that the postcancellation administrative remedy is confined to reinstatement. It is sufficiently unusual for an administrative agency to be authorized to award contract damages that one would expect to find mention of such a power in the authorizing statute if the agency were intended to have the power. Compare *Frank J. Linhares Co.* v. *Reliance Ins. Co.*, 4 Mass. App. Ct. 617, 622 (1976). Moreover, absent some indication in the statute that the administrative remedy for unlawful cancellation was intended to be exclusive, we find it difficult to accept the defendants' argument that the administrative reinstatement remedy, expressly subject to a ten-day limitations period, has foreclosed any contractual remedies for breach of the alleged promise not to cancel. We therefore hold that the plaintiff was not obliged to seek a reinstatement of coverage, which on the facts alleged[3] would have been useless to him, as a condition of preserving any remedy he might have in damages.

Whether this was a case of simple nonpayment, or whether there was, as the plaintiff alleges, a genuine dispute over the amount owed, is not apparent from the present record. An oral agreement to extend the time for payment may be enforceable in some circumstances. See *Carter* v. *Empire Mut. Ins. Co.*, 6 Mass. App. Ct. 114, 122 (1978). As to the plaintiff's reliance on such an agreement, see *Loranger Constr. Corp.* v. *E. F. Hauserman Co.*, 376 Mass. 757, 760-761 (1978). There is no basis for our concluding at this stage of the litigation that the circumstances were such that an agreement to extend the time for payment would have been

---

[3] The plaintiff claims that the United States Postal Service terminated his contract immediately after his insurance was cancelled and that the collapse of his business thereafter was both quick and inevitable.

unenforceable for want of consideration,[4] a basis not relied on by the judge in any event.

The defendants' contention that any agreement alleged would have been unenforceable as an oral binder (see G. L. c. 90, § 34A, "Certificate"; G. L. c. 175, § 113A, fifth par. from end) seems to be predicated on the theory that the insurance had been canceled before the agreement was made. The judge did not rule on that contention, and for the reasons stated in n.4, we decline to consider its correctness on the basis of the present record.

The judgment is reversed, and the case is to stand for further proceedings in the Superior Court.

*So ordered.*

---

[4] The defendants argue that the cancellation took place at 12:01 A.M. on Friday, September 12, before the extension agreement was allegedly worked out on Friday afternoon. But both the notice of cancellation and the statute, G. L. c. 175, § 113A(2), as amended by St. 1973, c. 405, stated that the cancellation would not be effective if the insured paid the full amount of the deficiency "on or prior to the effective date of the cancellation"; so arguably payment anytime Friday would have been timely to avoid cancellation. The notice stated that if the deficiency was not earlier paid, the notice of cancellation "will be sent to the Registrar of Motor Vehicles . . . on the effective date of cancellation stated above", suggesting that the matter of cancellation of the insurance and the revocation of the registration was not automatic but lay within the control of the insurer at least through Friday. We decline to rule on any of these matters until it has become apparent from a trial on the merits or other fact-finding process that their resolution is necessary to decide the present case.