437 Mass. 417 (2002)                                     417

Athol Memorial Hospital *v.* Commissioner of the Division of Medical Assistance.

ATHOL MEMORIAL HOSPITAL & others[1] *vs.* COMMISSIONER OF
THE DIVISION OF MEDICAL ASSISTANCE.

Suffolk. April 1, 2002. - August 6, 2002.

Present: MARSHALL, C.J., IRELAND, SPINA, COWIN, SOSMAN, & CORDY, JJ.

*Division of Medical Assistance. Massachusetts Medical Assistance Program.*
*Hospital,* Medicaid reimbursement. *Administrative Law,* Exhaustion of
remedies.

Acute-care hospitals seeking payment from the division of medical assistance
    for certain inpatient services provided to Medicaid recipients pursuant to
    the hospitals' respective provider contracts with the division were required
    to exhaust administrative remedies, as required by the division's regula-
    tions governing review of denials of payment, prior to bringing an action
    for breach of contract in the Superior Court, and the hospitals could not
    sidestep the contracts' statutory and regulatory scheme for review of deni-
    als of payment merely by characterizing the payment denials as a breach
    of contract [421-424]; further, the hospitals failed to demonstrate that they
    were not required to exhaust administrative remedies on the ground that
    their claims presented only issues of law that were beyond the division's
    expertise [424-425], or that they came within the futility exception to the
    exhaustion of remedies requirement [425-427]. CORDY, J., with whom MAR-
    SHALL, C.J., joined, concurring.

CIVIL ACTIONS commenced in the Superior Court Department
on February 18, 1999, and May 19, 1999, respectively.

After consolidation, the case was heard by *James F. McHugh,*
J., on a statement of agreed facts.

The Supreme Judicial Court granted an application for direct
appellate review.

*Gordon M. Jones, III (Carolyn Jacoby Gabbay* with him) for
Athol Memorial Hospital & others.

*Peter V. Kent* for Salem Hospital & others.

*Stephen Dick,* Assistant Attorney General, for the defendant.

[1]Other acute care hospitals with a principal place of business in
Massachusetts.

SPINA, J. The plaintiffs, acute-care hospitals,[2] seek payment from the division of medical assistance[3] for inpatient services provided to Medicaid recipients between March 1, 1994, and June 10, 1999, pursuant to their respective provider contracts with the division. In conducting review of the services, the division denied reimbursement on the ground that the services were not "medically necessary."[4] On February 5, 1999, we decided *Massachusetts Eye & Ear Infirmary* v. *Commissioner of the Div. of Med. Assistance*, 428 Mass. 805 (1999), which held that the division could not deny, pursuant to its claims review regulations, *all* reimbursement for treatment that was medically appropriate but performed in the wrong setting without clearly defining the terms on which such denial could be based. See *id.* at 814-817. The hospitals then brought these contract actions, claiming that the division's denial of reimbursement under "invalid" regulations constituted a breach of its agreement to compensate the hospitals for inpatient services provided to Medicaid patients. The cases were consolidated, then bifurcated, and the issue of liability was tried jury-waived on stipulated facts. A judge in the Superior Court ordered judgment for the division because the hospitals had failed to exhaust their administrative remedies and could not, therefore, recover under their contracts. We granted the plaintiffs' application for direct appellate review, and now affirm the judgment.

1. *Background.* We summarize the salient stipulated facts. The hospitals provided inpatient services to Medicaid recipients between March 1, 1994, and June 10, 1999, pursuant to standardized provider agreements with the division. The agreements state that the division would "reimburse the [hospitals] . . . for all reimbursable services and goods actually and properly delivered to eligible recipients and properly billed to

---

[2]See 130 Code Mass. Regs. § 415.402 (1999).

[3]The division of medical assistance is the State agency responsible for administering the medical assistance program in Massachusetts. See G. L. c. 118E, § 1. The medical assistance program, commonly known as Medicaid, is a joint Federal and State program established under Title XIX of the Social Security Act and designed to provide medical services to those in financial need. See 42 U.S.C. §§ 1396a et seq. (1994 & Supp. V 1999); 42 C.F.R. §§ 430.0 (2001); G. L. c. 118E, § 9; 130 Code Mass. Regs. §§ 450.000 (2001).

[4]A number of the plaintiffs also sought recovery for claims denied based on insufficient documentation. They expressly waived those claims on appeal.

the [d]ivision." Payment rates for services are "established by contract between the provider . . . and the division" and are "subject to all applicable Title XIX statutory and regulatory requirements." G. L. c. 118G, § 11.[5] Each contract required the parties to comply with all applicable State and Federal statutes, rules, and regulations governing Medicaid.

At all relevant times, the division's regulations stated that the hospitals would only be reimbursed for services that were "medically necessary." 130 Code Mass. Regs. § 450.204 (1998). Broadly stated, a service is "medically necessary" if it satisfies two requirements. It must be medically appropriate, and there must not be a more conservative or less costly suitable treatment. See 130 Code Mass. Regs. § 450.204(A).[6] The division does not dispute that the services provided were medically appropriate, i.e., clinically necessary, in each case. This appeal concerns only claims for services that were provided on an inpatient basis, but denied because the division concluded that a more conservative or less costly alternative existed, i.e., they should have been provided on an outpatient basis. 130 Code Mass. Regs. § 450.204(A)(2).

The Massachusetts peer review organization (MassPRO) was appointed to review services to determine whether they met the criteria for medical necessity.[7] See 130 Code Mass. Regs. § 450.206 (1999). If MassPRO found that services rendered were medically appropriate but could have been provided on a conservative or less costly (outpatient) basis, then it found that they were not medically necessary, and the hospitals would be denied any reimbursement for the treatment, including reimbursement at the lower outpatient rate. See 130 Code Mass. Regs. § 415.414(B) (2000). As of October 1, 1998, the division began to allow reimbursement in such cases at the outpatient

[5]General Laws c. 118G, § 11, inserted by St. 1996, c. 151, § 275, replaced G. L. c. 6B, § 2, repealed by St. 1996, c. 151, § 32, which contained a similar provision. See *Massachusetts Eye & Ear Infirmary* v. *Commissioner of the Div. of Med. Assistance*, 428 Mass. 805, 812 n.15 (1999).

[6]The regulation was amended, effective March 6, 1998, but the parties do not argue that the changes have any effect on the issues presented for review.

[7]Although claims were reviewed under prepayment and postpayment review programs, there is no need to distinguish between the two, as the governing regulations were identical in all material respects.

rate, provided that the services for which reimbursement was sought were medically appropriate.

From March 1, 1994, through May 31, 1999, MassPRO reviewed 81,627 inpatient admissions under the Medicaid program. It approved 74,090 (91%) and denied 7,537 (9%). On timely and adequate requests for reconsideration by the hospitals, see 130 Code Mass. Regs. § 450.211(C) (1997), MassPRO reviewed again 2,836 denials based on either medical necessity or billing errors, and overturned 721 (25%). From March 1, 1994, through May 31, 1999, 852 denials of reimbursement for inpatient admissions were appealed to the division's board of hearings. See 130 Code Mass. Regs. §§ 450.241 et seq. (1999). The board of hearings decided eleven appeals in favor of the hospitals, 184 were decided in favor of the division, and two were approved in part and denied in part. The remaining appeals were withdrawn either at, after, or prior to the hearing, or are pending. None of the cases decided in favor of the hospitals was decided on the ground that the regulations were invalid, although the record does not disclose if any of the prevailing hospitals raised that issue before the board of hearings.

At all relevant times, the regulation governing review of claims required the hospitals to pursue administrative remedies when challenging an adverse decision of the division before seeking judicial review in the Superior Court.[8] With regard to the claims at issue here — those for which the medically appropriate service had been provided on an inpatient basis, but for which reimbursement had been denied — the hospitals did not exhaust the administrative remedies prescribed by the regulations.

2. *Discussion.* The hospitals argue that they were not required to exhaust administrative remedies because (a) their claims were for breach of contract; (b) the question of the validity of the division's regulations is a question of law for the court to determine; and (c) exhaustion would have been futile because

---

[8]See 130 Code Mass. Regs. § 450.211 (April 4, 1997); 130 Code Mass. Regs. § 450.211 (Feb. 1, 1995); 130 Code Mass. Regs. § 450.211(E) (April 1, 1994) (prepayment review); 130 Code Mass. Regs. § 450.211 (Oct. 1, 1993); 130 Code Mass. Regs. § 450.211(C) (Feb. 1, 1995) (review).

the division refused to consider the legality of its own regulations.

(a) *Breach of contract.* The hospitals first contend that they were not subject to the requirements of G. L. c. 30A, the statute providing for judicial review of decisions of State administrative agencies, and they were not required to exhaust administrative remedies because their claims did not assert errors in decisions made by an administrative agency, but rather breach of contract. Contract claims against a governmental agency may be brought in a judicial rather than an administrative forum if the agency involved does not have authorization to consider such claims. See *Liability Investigative Fund Effort, Inc.* v. *Medical Malpractice Joint Underwriting Ass'n of Mass.*, 409 Mass. 734, 741-745 (1991); *Warner Ins. Co.* v. *Commissioner of Ins.*, 406 Mass. 354, 360-361 (1990).

The provider contracts incorporate by reference the claims review regulations promulgated by the division. The regulations require the division to determine whether inpatient hospital services were medically necessary, to be eligible for payment under the Medicaid program. They specify in detail the procedure by which hospitals may obtain review of the denial of their claims. The regulations expressly require hospitals to exhaust their administrative remedies before seeking judicial review. The regulations were promulgated pursuant to legislative authority. General Laws c. 118E, § 38, states: "The division may also promulgate regulations which establish procedures for providers to appeal erroneous denials by the division of a provider's claim for payment under this chapter." The statute also contemplates that judicial review shall be pursuant to G. L. c. 30A, § 14. See G. L. c. 118E, §§ 38, 48. Where the contract itself incorporates by reference this statutory and regulatory scheme for review of denials of payment, the hospitals may not sidestep that scheme merely by characterizing the payment denial as a "breach of contract."

Allowing the hospitals to circumvent administrative review would be contrary to the intent of Congress and the intent of the Legislature. Administrative review of claims for inpatient hospital services is consistent with the requirement under Federal law that the division "provide such methods and

procedures relating to the utilization of, and payment for, care and services available under the plan . . . as may be necessary to safeguard against unnecessary utilization of such care and services and to assure that payments are consistent with efficiency, economy, and quality of care." 42 U.S.C. § 1396a(a)(30)(A) (1994 & Supp. V 1999). See *Massachusetts Eye & Ear Infirmary* v. *Commissioner of the Div. of Med. Assistance*, 428 Mass. 805, 812-813 (1999). Cf. *Massachusetts Respiratory Hosp.* v. *Department of Pub. Welfare*, 414 Mass. 330, 334 (1993). It also advances the Legislature's goal of utilizing "procedures . . . as may be necessary for the proper and efficient operation of [the Medicaid program] in a manner consistent with simplicity of administration and the best interests of recipients." G. L. c. 118E, § 12. See *Massachusetts Respiratory Hosp.* v. *Department of Pub. Welfare, supra* at 334-335.

There is no indication that the Congress, the Legislature, or even the parties intended the hospitals to have a common law remedy for payment of claims under Medicaid. The requirement that the division determine the question of medical necessity in the first instance ensures a speedy and efficient means of resolving a high volume of claims involving relatively straightforward but technical questions for which the division has "special expertise," and it promotes "uniformity and consistency in the regulation of business entrusted to [the division]." *Kartell* v. *Blue Shield of Mass., Inc.*, 384 Mass. 409, 413, 414 (1981). Allowing these cases to be decided by a jury is incompatible with the Federal and State legislative purposes of providing prompt medical treatment that is both appropriate and economical, and providing prompt payment for such treatment.

Even if, as the hospitals contend, some regulations promulgated by the division constitute a breach of the provider contract because they conflict with Federal law, it does not follow that the remedy for such a breach is a jury trial to determine whether it was appropriate to provide the service on the more costly inpatient basis and whether the services would be compensated on that basis. In *Massachusetts Eye & Ear Infirmary* v. *Commissioner of the Div. of Med. Assistance, supra*, we said that the division could not, under existing regulations, deny *all* reimbursement for appropriate medical services. We also said

437 Mass. 417 (2002)                                              423

Athol Memorial Hospital *v.* Commissioner of the Division of Medical Assistance.

that the division nevertheless could address claims for reimbursing hospitals at the applicable rate by developing definitions of "inpatient" and "outpatient" services, and have the cases resolved on a case-by-case basis through the adjudicatory process. *Id.* at 817. See *Twomey* v. *Commissioner of Food & Agric.*, 435 Mass. 497, 502 n.10 (2001), quoting *Arthurs* v. *Board of Registration in Medicine*, 383 Mass. 299, 312-313 (1981) ("It is a recognized principle of administrative law that an agency may adopt policies through adjudication as well as through rulemaking"). Thus, the administrative procedure under the Medicaid regulations for deciding whether appropriate medical services could have been provided in a less costly outpatient setting remains viable. There is no basis to conclude that the remedy for a breach of contract arising from certain "invalid" regulations is a jury trial to determine whether a hospital should have decided to provide a clinically necessary service on an outpatient rather than an inpatient basis.

The hospitals' reliance on *Warner Ins. Co.* v. *Commissioner of Ins.*, *supra*, and *Lapierre* v. *Maryland Cas. Co.*, 14 Mass. App. Ct. 248 (1982), is misplaced. In *Warner Ins. Co.* v. *Commissioner of Ins.*, *supra* at 360-361, we said that the Commissioner of Insurance had no authority under any statute to make a binding interpretation of a settlement agreement to which he was a party, and that interpretation of the settlement agreement was a matter for the court. Here, the division has been given authority to determine the question of medical necessity subject only to limited judicial review under G. L. c. 30A, § 14. See *Massachusetts Eye & Ear Infirmary* v. *Commissioner of the Div. of Med. Assistance*, *supra* at 813; *Massachusetts Respiratory Hosp.* v. *Department of Pub. Welfare*, *supra* at 336.

In *Lapierre* v. *Maryland Cas. Co.*, *supra* at 252,[9] the Appeals Court held that an insured was not required to pursue his administrative remedy against his insurer for unlawful cancella-

[9]*Lapierre* v. *Maryland Cas. Co.*, 14 Mass. App. Ct. 248 (1982), involved the doctrine of primary jurisdiction. The doctrine of primary jurisdiction does not apply here because the claims in question had been the subject of administrative review. The doctrine of primary jurisdiction precludes judicial consideration of a matter where administrative proceedings have not yet begun. The related doctrine of exhaustion of administrative remedies, applicable here to at least some claims, prevents judicial interference with pending

tion of his motor vehicle policy before commencing an action for breach of contract because the administrative remedy was limited to reinstatement of the policy and there was no indication that the Legislature intended that reinstatement should be the exclusive remedy. By contrast, determination of the medical necessity of inpatient hospital services, precisely the question that the hospitals ask the court to resolve, is a matter that the Legislature has committed to the division's discretion. See *id.* at 250, citing *Murphy* v. *Administrator of the Div. of Personnel Admin.*, 377 Mass. 217, 221 (1979).

Where the Legislature has authorized the division to promulgate regulations to determine claims for payment of medical services rendered pursuant to the Medicaid program, where the division has adopted an administrative review process for that purpose, and where the provider contract requires the hospitals to submit their claims thereunder before pursuing their judicial remedies, the hospitals must exhaust their administrative remedies. See *Massachusetts Respiratory Hosp.* v. *Department of Pub. Welfare, supra* at 338. The judicial remedies available to hospitals in such cases are those afforded under G. L. c. 30A. *Id.*

(b) *Question of law.* The hospitals argue that they were not required to exhaust administrative remedies because their claims presented only issues of law beyond the division's expertise. See *Briggs* v. *Commonwealth*, 429 Mass. 241, 249 n.19 (1999); *Hartford Acc. & Indem. Co.* v. *Commissioner of Ins.*, 407 Mass. 23, 26-27 (1990). The hospitals cannot escape the fact that they seek payment for services at the inpatient rate, a question committed to the discretion of the division based on its investigation of the medical facts. The hospitals abandoned most of the claims for which they now seek payment, leaving no administrative record to support their current contention that there is no question of fact whether a clinically necessary procedure should have been performed on an inpatient or outpatient basis. In particular, it does not follow from our decision in *Massachusetts Eye & Ear Infirmary* v. *Commissioner of the Div. of Med. Assistance, supra* at 817, that because certain regulations, as

administrative proceedings. See *Murphy* v. *Administrator of the Div. of Personnel Admin.*, 377 Mass. 217, 220 (1979).

implemented, are inconsistent with Federal law, all claims for medically appropriate services must be compensated at the higher inpatient rate as a matter of law, even under a standard consistent with Federal law.

The trial judge correctly ruled that factual considerations underlying claims for reimbursement for inpatient care require the division's assessment of whether the particular treatment rendered in each case was medically appropriate, and could have been provided in a more conservative or less costly setting. He also found that, if the legal theory now being pressed had been made to the division, the board of hearings would have noted that fact in the record to preserve the question for judicial review under G. L. c. 30A. The purposes of exhaustion thus would have been served and issues would have been properly preserved for judicial review had the hospitals pursued reimbursement through the administrative process, as occurred in the *Massachusetts Eye & Ear Infirmary* case. See *Massachusetts Respiratory Hosp.* v. *Department of Pub. Welfare,* *supra.*

(c) *Futility.* The hospitals' final contention is that they should not be required to exhaust administrative remedies because to do so would have been futile: the board of hearings refused to consider the legality of the division's regulations, the central issue of this litigation.

They rely on *Stock* v. *Massachusetts Hosp. Sch.,* 392 Mass. 205, 213 (1984), *S.C.,* 394 Mass. 437, 439 (1985), and *Ciszewski* v. *Industrial Acc. Bd.,* 367 Mass. 135, 141 (1975). Those cases are distinguishable. In *Stock* v. *Massachusetts Hosp. Sch., supra* at 209, the plaintiff's request for an administrative appeal was denied on jurisdictional grounds. We held that, in the unusual circumstances of that case, exhaustion was futile. *Id.* at 213. Here, the hospitals were not denied an administrative appeal, they *elected* not to pursue one. In *Ciszewski* v. *Industrial Acc. Bd., supra* at 141, we said that the futility exception to the requirement for exhaustion applies "where the power and authority of the agency themselves are in question, and not where the exercise of that agency's discretion is challenged." The hospitals do not challenge the power or authority of the division to determine whether the services provided were medi-

cally appropriate. Rather, they challenge the standards used to make the determination as to the second prong: that there is no more conservative or less costly course of treatment. Thus, their challenge goes to the division's exercise of discretion.

The hospitals next focus on the regulations that direct the board of hearings not to consider challenges to the validity of the regulations. See 130 Code Mass. Regs. §§ 450.244, 610.082(C)(2). They maintain that these regulations provided "absolutely no opportunity" for them to have their claims raised within the context of the available administrative procedures. They contend that exhaustion of administrative remedies is not required where "it is clear beyond doubt that the relevant administrative agency will not grant the relief in question." *Massachusetts Bay Transp. Auth.* v. *Labor Relations Comm'n,* 425 Mass. 253, 258 (1997), quoting *American Fed'n of Gov't Employees* v. *Acree,* 475 F.2d 1289, 1292 (D.C. Cir. 1973). The argument is unpersuasive.

The doctrine of exhaustion of administrative remedies is one of deference to the Legislature where it has expressed its intent that a particular question be determined in the first instance by an administrative agency. Exceptions are rare. See *Wilczewski* v. *Commissioner of the Dep't of Envtl. Quality Eng'g,* 404 Mass. 787, 792 (1989). Although futility is such an exception, it does not apply in the circumstances of this case.[10] All factual issues on the question of the medical necessity of services could be

---

[10]Notwithstanding the inapplicability of the futility exception, it does not appear that review was futile. The hospitals failed to request or perfect reconsideration in 4,701 denials. In the 2,836 cases where reconsideration was conducted, MassPRO granted relief to the hospitals in 721, or 25%. The board of hearings granted the hospitals complete relief in eleven appeals, partial relief in two, and no relief in 184. Exhaustion cannot be said to be futile where the relief sought has been obtained in approximately 25% of cases reviewed. See *Massachusetts Respiratory Hosp.* v. *Department of Pub. Welfare,* 414 Mass. 330, 337 (1993) (no showing of futility where relief granted in approximately 50% of cases).

Moreover, as the trial judge found, "although the regulations provided otherwise, the [d]ivision did provide reimbursement at an outpatient level at least on some occasions [after October 1, 1998,] when it determined that inpatient services were not 'medically necessary' [i.e., services were medically appropriate, but there existed a less costly alternative]. Pursuit of administrative remedies thus may well have produced partial payment of at least some of the rejected claims." See *Gordon* v. *Hardware Mut. Cas. Co.,* 361 Mass.

resolved by the board of hearings. If the board of hearings applied the law incorrectly to the facts it found, such an error could be rectified in a complaint for judicial review under G. L. c. 30A, § 14, as it was in *Massachusetts Eye & Ear Infirmary* v. *Commissioner of the Div. of Med. Assistance, supra.*

Moreover, the Legislature did more than express an intent to have factual disputes under the medical assistance program resolved in the first instance by the division. Under the statute, exhaustion of remedies is a jurisdictional prerequisite to judicial review. General Laws c. 118E, § 38, third par., states: "The provider's right to payment under this chapter shall be extinguished if the provider fails to file an appeal within the time prescribed by the division." Those claims for which no appeal was taken to the board of hearings within thirty days of notice of the division's final denial of the claim, which comprise a vast majority of the hospitals' claims, have been "extinguished." *Id.* See *Massachusetts Respiratory Hosp.* v. *Department of Pub. Welfare, supra* at 338. Those cases that are still pending are entitled to the benefit of our decision in *Massachusetts Eye & Ear Infirmary* v. *Commissioner of the Div. of Med. Assistance, supra.*

*Judgment affirmed.*

CORDY, J. (concurring, with whom Marshall, C.J., joins). I agree with the court's conclusion that the plaintiffs cannot proceed on a breach of contract theory, and that they have forfeited any right to reimbursement at the inpatient rate on any denied claim not administratively appealed to the division's board of hearings as required by 130 Code Mass. Regs. § 450.211 (1997). I write separately to express my view that the plaintiffs could properly have sought reimbursement at the outpatient rate for all claims denied solely on the ground that the treatment, while medically appropriate, could have been provided in a more conservative or less costly (i.e., outpatient) setting, even though they did not administratively appeal from those denials.

582, 586 (1972) (question is not whether administrative remedy is as broad as that sought in court but whether it is inadequate).

It is uncontested that prior to our decision in *Massachusetts Eye & Ear Infirmary* v. *Commissioner of the Div. of Med. Assistance*, 428 Mass. 805 (1999) (*Mass. Eye & Ear*), the division's regulations did not permit any reimbursement for claims submitted as inpatient claims, even when the medical treatment provided was appropriate in every respect, if the division concluded that the treatment could have been provided in an outpatient setting. Although the division's regulations permitted the appeal of the denial of a "medically appropriate" inpatient claim, the only issue the hearing board could decide was whether the setting of the treatment (inpatient) was warranted. The board was specifically without jurisdiction to decide challenges to the regulatory scheme, including challenges to the propriety of excluding all reimbursement for medically necessary treatment rendered in the wrong setting, nor did it have the authority to grant outpatient reimbursement for inpatient care.

In these circumstances, any attempt by the plaintiffs to obtain anything other than reimbursement at the inpatient rate through the administrative appeals process would have been completely futile. Futility is a well-recognized exception to the requirement that plaintiffs exhaust their administrative remedies before seeking relief from the court. See *Space Bldg. Corp.* v. *Commissioner of Revenue*, 413 Mass. 445, 448 (1992); *DiStefano* v. *Commissioner of Revenue*, 394 Mass. 315, 319 (1985). Its application is particularly apt where the customary rationales for the doctrine of exhaustion, avoidance of unnecessary judicial intervention and the unhampered exercise of agency expertise on a well-developed factual record of its own making do not apply. *American Fed'n of Gov't Employees* v. *Acree*, 475 F.2d 1289, 1292 (D.C. Cir. 1973). In the present circumstances, judicial intervention was inevitable because the board was not empowered to provide the relief (reimbursement at the outpatient rate), and additional agency expertise was irrelevant with respect to claims that it had already reviewed and concluded were for appropriate medical treatment rendered in the wrong setting.

Claims that would have been futile to pursue through the administrative appeals process would not, in my view, be barred

by G. L. c. 118E, § 38. Section 38 empowers the division to establish procedures for the appeal from denials of provider claims, and to set deadlines for the filing of such appeals. It also provides that "[t]he provider's right to payment under this chapter shall be extinguished if the provider fails to file an appeal within the time prescribed by the division." I would interpret § 38 as extinguishing only claims to payment that could have been obtained through the appeals process that the division, by regulation, provided, and not claims for payment which could not have been obtained by the very terms of the division's regulations.

Claims for payment at the outpatient rate for the services at issue here only became viable when this court decided in *Mass. Eye & Ear* that the division's medical necessity regulations violated Federal Medicaid requirements, and that the division could not refuse (under those regulations) to pay anything for services that were medically appropriate but performed in the wrong setting. While the division is free, as we noted in *Mass. Eye & Ear, supra* at 817, to promulgate new regulations that deny all reimbursement to providers who provide treatment in the wrong setting, those rules must be clear and provide substantive criteria which can be understood and applied by providers charged with making good faith judgments about treatment requirements. Such regulations did not exist at the time these claims were denied.

Consequently, I would have allowed the case to proceed, as limited to claims for payment at the outpatient rate, had plaintiffs sought this relief. They did not.