320 61 Mass. App. Ct. 320 (2004)

Centennial Healthcare Investment Corp. *v.* Commissioner of the Division of Medical Assistance.

## CENTENNIAL HEALTHCARE INVESTMENT CORP.[1] *vs.* COMMISSIONER OF THE DIVISION OF MEDICAL ASSISTANCE & another.[2]

No. 02-P-915.

Suffolk. November 10, 2003. - June 16, 2004.

Present: GREENBERG, BERRY, & MCHUGH, JJ.

*Division of Medical Assistance. Massachusetts Medical Assistance Program. Medicaid. Practice, Civil,* Standing. *Judgment,* Preclusive effect. *Contract,* Performance and breach. *Administrative Law,* Judicial review.

This court concluded that the plaintiff health care provider did not have standing to contest the determination by the division of medical assistance of the eligibility of one of the plaintiff's patients to receive medical assistance benefits. [324-329]

In a civil action by a health care provider challenging the eligibility of one of *its patients for benefits* under the Massachusetts medical assistance program, the health care provider did not state a claim for breach of contract on the part of the patient's guardian for applying for medical assistance benefits and seeking the refund to which the law entitled him for amounts previously paid to the health care provider, where the fact that the health care provider had previously entered into an agreement for judgment with the guardian that provided for payment to the health care provider for services previously rendered did not give the health care provider a protected property interest in the judgment. [329-330]

In a civil action seeking judicial review of the division of medical assistance's decision affirming the imposition of sanctions against a health care provider for its failure to refund to a patient's guardian the amount he had previously paid the health care provider upon notice of the patient's eligibility for medical assistance benefits, the judge properly affirmed the board's decision, where the health care provider had violated its statutory obligations. [330-331]

The judge in a civil action erred in dismissing that portion of a health care provider's breach of contract claim against a patient's guardian for amounts owed for services after the period for which the patient was eligible for medical assistance benefits. [331]

CIVIL ACTION commenced in the Superior Court Department on July 5, 2001.

[1] Doing business as Charlwell House.
[2] Paul Donovan, individually and as guardian of Thomas Columbo.

A motion to dismiss and a motion for judgment on the pleadings were heard by *Maria I. Lopez,* J.

*Brian A. Gillis* for the plaintiff.

*John P. Fulginiti* for Paul Donovan.

*Stephen Dick,* Assistant Attorney General, for Commissioner of the Division of Medical Assistance.

GREENBERG, J. This case involves a health care provider's challenge to the eligibility of one of its patients for benefits under the Massachusetts medical assistance program, pursuant to G. L. c. 118E. The plaintiff, Centennial Healthcare Investments Corporation (Centennial), doing business as Charlwell House, a skilled care nursing facility in Norwood, appeals from the dismissal of its complaint against the division of medical assistance (division) and Paul Donovan, the guardian of Thomas Columbo, a senior citizen resident at Charlwell House.[3] The Superior Court judge dismissed Centennial's complaint on the grounds that Centennial lacked standing to contest the division's determination of Columbo's eligibility to receive Medicaid benefits, that Donovan had not waived Columbo's right to apply for benefits, and that the division's imposition of sanctions against Centennial was supported by substantial evidence and was correct as matter of law. We affirm the dismissal, with the exception of Centennial's claim contained in count VI against Donovan for amounts owed for Columbo's care after his Medicaid eligibility expired.

1. *Background.* We summarize the facts, taken from the pleadings, the administrative record, and Centennial's and the division's joint statement of agreed facts submitted in connection with Centennial's appeal of sanctions to the division's board of hearings.

Thomas Columbo was admitted to Charlwell House in Janu-

---

[3]The division of medical assistance is the State agency responsible for administering the medical assistance program, commonly known as Medicaid, a joint Federal and State program designed to provide medical services to persons in financial need. G. L. c. 118E, § 1. See *Athol Memorial Hosp.* v. *Commissioner of the Div. of Med. Assistance,* 437 Mass. 417, 418 n.3 (2002). As Massachusetts law is in conformity with the Federal statute, Title XIX of the Social Security Act, 42 U.S.C. §§ 1396 et seq. (2000), we shall rely primarily on the State statute and regulations in our discussion. See G. L. c. 118E, § 9.

ary, 1993; he was in his late eighties at the time and mentally incapacitated. Throughout the period of Columbo's residency at Charlwell House, Centennial was under contract with the division to provide skilled nursing home care for residents receiving medical assistance through the Medicaid and Medicare programs.[4] Upon Columbo's admission, Columbo's temporary guardian, a family member, agreed to pay the cost of Columbo's care; Columbo's assets at the time of his admission exceeded $1 million.

Shortly thereafter, Paul Donovan, an attorney, was appointed Columbo's guardian and arranged to pay Centennial from Columbo's cash assets and, later, from the sale of portions of Columbo's real estate. In April, 1997, Donovan stopped paying Centennial, claiming that Columbo's cash assets were depleted and that he was attempting to sell additional real estate to cover the nursing home expenses. After unsuccessful negotiations between Donovan and Centennial, and a failed attempt by Donovan to obtain a court injunction to prevent Centennial from discharging Columbo, Centennial filed a complaint in Norfolk Superior Court in September, 1998, to recover over $90,000 for unpaid services.

That case was settled on February 18, 1999. Centennial and Donovan, in his capacity as Columbo's guardian, executed an agreement for judgment, pursuant to which Donovan agreed to pay Centennial $71,573, less any payments received after that date, for services provided through February 28, 1999.[5] A second agreement for judgment dismissed Donovan's counterclaims. Donovan began liquidating Columbo's assets. However, on April 28, 1999, he moved to stay the entry of final judgment, stating, among other things, that a delay in his receipt of payment in the sale of one of Columbo's real properties did not warrant Centennial's execution on the judgment, and that Donovan's application for Medicaid on Columbo's behalf, if approved, would reduce the amount of the judgment. Donovan's motion was denied, and final judgment was entered for Centennial on May 3, 1999.

---

[4]The provider agreement in effect at the time of Centennial's complaint was executed on February 26, 1999.

[5]The agreement for judgment further provided that the parties waived "all rights to vacate, appeal from and to any stay of execution on this Judgment."

In October, 1998, while this dispute with Centennial was pending, Donovan filed an application for Medicaid benefits for Columbo. The division initially denied the application on the basis of Columbo's extensive assets. At Donovan's request, the division held a hearing on the application. Centennial attempted to appear at that hearing, but was not permitted to attend or participate. Again, the division denied Columbo's application. Donovan then sought a rehearing, and the division, on its own, determined that Columbo was, in fact, eligible to receive benefits, retroactive for the period from July 1, 1998, to July 16, 1999.[6] The term of Columbo's eligibility was later extended to October 18, 1999.

As a result, the division issued a notice approving Columbo's Medicaid application on September 22, 1999.[7] Donovan wrote to Centennial, notifying it of Columbo's Medicaid eligibility and seeking a refund of $70,250.41 for amounts he had paid for nursing home services between July, 1998, and July, 1999; he instructed Centennial to submit a bill to the division for that period instead. Centennial failed to respond. Subsequent letters, with adjustments in the amounts demanded, likewise went unanswered.

By letter dated December 8, 1999, the division, taking Columbo's side, notified Centennial that it was in violation of the law and its provider agreement for its failure to reimburse Donovan, and threatened the imposition of sanctions. Centennial responded that it was investigating the matter. On January 24, 2000, the division sent Centennial a sanction notice, imposing a

---

[6]By way of background only, we note from the administrative record that it appears that the change in the division's position was related to Donovan's attempt to sell Columbo's real estate, which was held in trust and so originally not deemed an exemption from countable assets by the division. Pursuant to 130 Code Mass. Regs. § 610.051 (2002), which allows for the division to make an adjustment in the matters at issue before or during a hearing, the division reached an agreement with Donovan regarding Columbo's eligibility without the need for a further hearing. We also note that while Centennial complains throughout its brief of the seeming incongruity of a well-to-do individual such as Columbo receiving Medicaid benefits, Centennial acknowledged below that the division could recoup those benefits from the eventual sale of Columbo's real estate.

[7]Subsequent notices revised the amount of assistance and the date of eligibility.

fine of $54,900 for its failure to refund to Donovan amounts he had paid at the private pay rate for the period of Columbo's eligibility. Centennial appealed the sanction. Following an adjudicatory hearing, the hearing officer affirmed the imposition of sanctions, but reduced the award so that the sanctions accrued from the date Centennial received notice of Columbo's eligibility, rather than from the actual date of his eligibility.

Centennial filed this action in Suffolk Superior Court on July 5, 2001, alleging breach of contract, constitutional violations, and civil conspiracy; seeking declaratory and injunctive relief; and requesting a review of the board's decision under G. L. c. 30A, § 14, affirming the imposition of sanctions. Donovan filed a motion to dismiss, and the division joined in the motion. Centennial moved for judgment on the pleadings on count VIII of its complaint, for c. 30A review of the sanctions. The judge allowed the defendants' motion to dismiss as to all counts except count VIII; as to that count, the judge ruled that the board's decision was supported by substantial evidence and correct as matter of law. Judgment was entered for the defendants on all counts, and Centennial filed this appeal.

2. *Standing to challenge eligibility.* The statute and regulations governing the Massachusetts medical assistance programs do not provide a mechanism for a provider to challenge the grant of medical assistance to one of its patients. General Laws c. 118E, § 47, provides a right of appeal to an applicant or recipient, or his or her legal representative, aggrieved by the division's failure to grant medical assistance or a decision to withdraw such assistance. Such appeals are to follow the procedure for fair hearing set out in c. 118E, § 48.

In addition, the regulations, expanding on the fair hearing procedure, provide a right to a hearing for "applicants, members, residents, and employers," seeking review of "certain actions or inactions on the part of the Division." 130 Code Mass. Regs. § 610.012 (2002).[8] Applicants and members may request a fair hearing on specified grounds affecting eligibility and assistance levels, as set forth in 130 Code Mass. Regs. § 610.032(A) (2002). Included among those actions are "denial

---

[8]It is undisputed that Centennial is none of these.

of an application or request for assistance, or the right to apply or reapply for such assistance," and "individual Division determinations regarding scope and amount of assistance." 130 Code Mass. Regs. § 610.032(A)(1), (4). Significantly for our purposes, the regulations require the board of hearings to dismiss a request for a hearing when the party seeking review is not "an applicant, member, resident, authorized representative, or employer." 130 Code Mass. Regs. § 610.035(A)(7) (2002).[9] Finally, pursuant to 130 Code Mass. Regs. § 610.092(A) (2002), the appellant (which would, again, include only "applicants, members, residents, and employers" under § 610.012[A]), may seek judicial review, under G. L. c. 30A, of the final decision of the hearing officer. We note that this section specifically allows a nursing facility to seek judicial review of only one narrow area, a final decision involving a nursing facility-initiated transfer or discharge, under 130 Code Mass. Regs. § 610.032(B).

As to providers, the statute expressly requires that, as a condition for participation, they must "agree to accept, as payment in full, the amounts paid in accordance with the fee schedules provided for under this chapter." G. L. c. 118E, § 36(3). The regulations further require that the provider must refund to the patient, upon the patient's request, all sums paid by the patient at the private rate, retroactive to the date of eligibility. 130 Code Mass. Regs. § 450.203 (2002). The statute does expressly afford providers the right to seek review of certain payment decisions made by the division; G. L. c. 118E, § 38, provides for the establishment of procedures for providers wishing to appeal the division's denials of a provider's claim for payment. Providers are also afforded standing to challenge the division's rate determinations. See G. L. c. 118E, § 7. But Centennial points to no statute or regulation that confers standing on a provider to challenge the division's determination that one of its patients is entitled to benefits under the medical assistance program. See *Local 1445, United Food & Commercial Workers Union* v. *Police Chief of Natick*, 29 Mass. App. Ct. 554, 558 (1990). See generally *Hagen* v. *Commonwealth*, 437 Mass. 374,

---

[9]Presumably, Centennial's attempt to participate in Columbo's eligibility proceedings was denied on this basis.

379 (2002), quoting from *Commonwealth* v. *Russ R.*, 433 Mass. 515, 521 (2001) (no standing conferred on a victim to move for prompt disposition of a criminal matter under G. L. c. 258B, because "a statutory expression of one thing is an implied exclusion of other things omitted from the statute").

Indeed, Centennial concedes in its reply brief that the statute and regulations provided no right for Centennial to intervene or otherwise participate in Columbo's application process or to request a hearing on the issue.[10] But Centennial argues that it has standing to bring an action at common law to challenge the division's authority to approve Columbo's application where the division's action purportedly violated Centennial's provider agreement and State and Federal law.[11] Centennial pins its hopes on the following: it argues that if the division granted eligibility to Columbo in contravention of the regulations, i.e., that Columbo had too much cash or too many assets to meet the eligibility requirements, then the division was without authority to confer those benefits, and hence, had no authority to require Centennial to abide by its decision to accept the lower Medicaid payment, and to impose sanctions for Centennial's failure to do so.

"When a statute confers standing in relation to particular subject matter, that statute, rather than more general ideas about standing, governs who may initiate legal action in relation to the subject matter. *Boston Edison Co.* v. *Boston Redev. Authy.*, 374 Mass. 37, 46 (1977). *Bello* v. *South Shore Hosp.*, 384 Mass. 770, 780 (1981)." *Local 1445, United Food & Commercial*

---

[10]Centennial's complaint did not challenge the division's fair hearing regulations themselves, nor did Centennial seek judicial review as an aggrieved person, pursuant to G. L. c. 30A, § 14, of the division's approval of Columbo's application for Medicaid benefits within thirty days of notice. We therefore do not address the question whether a provider could properly resort to an action in the Superior Court under c. 30A, § 14, to obtain judicial review of an eligibility determination rendered in an adjudicatory proceeding initiated by the Medicaid applicant.

[11]Centennial's provider agreement is not a part of the record on appeal. We note that providers must agree to comply with all State and Federal laws and regulations governing the medical assistance program. See c. 118E, §§ 36, 37. See also *Athol Memorial Hosp.* v. *Commissioner of the Division of Med. Assistance*, 437 Mass. 417, 419 (2002) (statute and regulations governing the Medicaid program were incorporated into the standardized provider agreement).

*Workers Union* v. *Police Chief of Natick*, 29 Mass. App. Ct. at 558-559. It is true that in the ordinary course, a party to a contract would have standing to bring a breach of contract claim against the other contracting party that caused the claimant to incur damages. But Centennial, in order to be eligible as a provider, specifically agreed, pursuant to c. 118E, § 36, to comply with all laws, rules, and regulations governing the operation of the Medicaid program. As noted, the statutory and regulatory scheme governing the Medicaid program required Centennial to accept Medicaid payments as payment in full, and to refund the private payments received from Donovan; it did not afford Centennial standing to assert a claim that the division failed to comply with the law in granting Columbo eligibility. This is true even though Centennial alleges that, in so doing, the division breached its provider contract with Centennial.

In this instance, we cannot ignore the import of Federal and State law in determining a provider's contractual rights. In our view, issues directly involving administration of the medical assistance program, including the determination of eligibility, the amounts of payments to providers, and the contractual relationship between the provider and the division, are governed by c. 118E and the standing requirements enunciated therein. As an example, in *Athol Memorial Hosp.* v. *Commissioner of the Div. of Med. Assistance*, 437 Mass. 417, 421-422 (2002), the Supreme Judicial Court rejected the providers' common-law claim for breach of contract where the regulations governing the providers' contract established a procedure for administrative review of denials of payment under c. 118E, § 38. As the court observed, "[t]here is no indication that the Congress, the Legislature, or even the parties intended the [providers] to have a common law remedy for payment of claims under Medicaid." *Id.* at 422.

Along those same lines, we think a determination here of whether the division breached its contract with Centennial by finding Columbo eligible for assistance cannot be viewed as distinct from the statute and regulations that limit the review of eligibility to the applicants themselves. We are also mindful of the overriding design and purpose of the medical assistance laws and the broad authority afforded the division in implementing the Legislative objectives:

"In administering the medical assistance program established under this chapter, the division shall formulate such methods, policies, procedures, standards and criteria, except medical standards and criteria, as may be necessary for the proper and efficient operation of those programs in a manner consistent with simplicity of administration and the best interests of recipients."

G. L. c. 118E, § 12, first par.

Pursuant to the statutory and regulatory scheme, the division has been given broad authority to determine the question of eligibility for medical assistance, with an eye toward administrative simplicity and the recipient's best interest, subject only to limited administrative and judicial review. The contractual issue alleged in Centennial's complaint requires a determination whether the division properly awarded benefits to Columbo in accordance with the eligibility requirements of the controlling law. As we see it, the issue inescapably centers on Columbo's eligibility, the review of which is governed by statute. "[W]hen an issue involves an area of law governed by a specific statute with a standing requirement, that issue is governed by the standing requirements of the particular statute and not by a general grant of standing." *Bello* v. *South Shore Hosp.*, 384 Mass. at 780, quoting from *Boston Edison Co.* v. *Boston Redev. Authy.* 374 Mass. at 46.

Accordingly, Centennial cannot rely upon more forgiving common-law notions of standing to circumvent the standing requirements in the controlling statute and regulations that limit the appeal of eligibility to the applicant. Moreover, Centennial's lack of standing to challenge Columbo's eligibility disposes of much of Centennial's complaint, as the judge so ruled. Beyond Centennial's breach of contract claim, the issue at the core of several counts of Centennial's complaint is Columbo's eligibility, regardless of the legal theory alleged and the context in which it appears.

This holds true, then, for those counts of Centennial's complaint that require for their resolution a ruling that the division erred in determining that Columbo was entitled to receive benefits. Specifically, in addition to count V for breach of contract against the division, dismissal was proper for those

aspects of Centennial's constitutional claims alleging due process violations in connection with Centennial's claim of a property interest in its provider contract, civil conspiracy to deprive Centennial of its property interest by requiring reimbursement to Donovan, and claims for injunctive and declaratory relief with respect to eligibility and related claims.

3. *Effect of the prior judgment.* Centennial brought claims for breach of contract against Donovan, as well as constitutional and civil conspiracy against Donovan and the division, asserting, among other things, that the February 18, 1999, agreement for judgment in the Norfolk Superior Court action, providing for Donovan's payment to Centennial at the private pay rate, gave Centennial a protected property interest in the judgment. The agreement for judgment, which required Donovan to pay Centennial the amount of $71,573 for services through February 28, 1999, also provided that it would be reduced by any payments received on or after February 18, 1999.

As previously explained, Centennial was obligated, pursuant to its provider agreement and controlling law, upon its patient's eligibility to accept the amount paid by Medicaid as payment in full and to reimburse to the patient the amount paid at the private rate, retroactive to the date of eligibility. We discern no inconsistency between the judgment establishing the amount due pursuant to the private payment rate as of February 18, 1999, which Donovan paid, and the division's subsequent determination that Columbo was eligible for benefits, which triggered Centennial's obligation to return the amount paid to Donovan and to seek payment from the division instead. See, e.g., *Young* v. *Department of Pub. Welfare*, 416 Mass. 629, 632-634 (1993) (Probate Court had jurisdiction to determine a trustee's discretion to make distributions under the terms of a trust, without affecting the division's authority to determine Medicaid eligibility for the trust beneficiary).

On this score, we agree with Donovan that, regardless of the means by which Centennial procured private payment of its bill for services, whether by voluntary payment or through a collection action, Centennial was still obligated, pursuant to G. L. c. 118E, § 36(3), to accept the Medicaid rate as payment in full and to reimburse Donovan once Columbo was found eligible,

retroactive to the date of eligibility. 130 Code Mass. Regs. § 450.311(B) (2002).

Centennial also claims that Donovan waived all rights to pursue Medicaid benefits on Columbo's behalf by executing the agreement for judgment in the Norfolk Superior Court action, so that Donovan's continued pursuit of benefits after that agreement was signed constituted breach of contract. For factual support, Centennial relies only on the dismissal of Donovan's counterclaim in the Norfolk Superior Court action. That counterclaim alleged G. L. c. 93A violations against Centennial for its failure to inform Donovan of rights and procedures for pursuing Medicaid benefits. Centennial points to no theory of law that persuades us that Donovan's agreement to dismiss the c. 93A counterclaim against Centennial, for allegedly violating its duty to disclose the availability of Medicaid benefits to a patient, constituted a waiver of Donovan's right to pursue Medicaid benefits.[12] The facts stated in Centennial's complaint thus do not support a claim for breach of contract against Donovan for applying for Medicaid benefits and seeking the refund to which the law entitled him.

4. *Review of sanctions under G. L. c. 30A.* In count VIII, Centennial timely sought judicial review, under c. 30A, § 14, of the division's decision following an adjudicatory hearing, which affirmed in part the imposition of sanctions against Centennial for its failure to refund to Donovan the amount he had paid Centennial at the private pay rate. The hearing officer reduced the amount of sanctions so that the penalty was calculated from the date Centennial received notice of Columbo's eligibility, rather than from the date of eligibility.

But to the extent that Centennial's c. 30A appeal sought review of the division's underlying determination that Columbo was eligible for benefits, the hearing officer refused to address the eligibility issue for lack of standing.

On appeal, Centennial argues that in order to review the sanction, it was necessary for the hearing officer to review the division's underlying action to determine if the sanction was

---

[12]The joint statement of agreed facts submitted by Centennial and the division, stating that Donovan had waived the right to apply for Medicaid benefits, was not binding on Donovan, who was not a party in the sanction proceedings.

based on a valid exercise of the division's authority. However, where the statutory and regulatory scheme afforded Centennial no right to a hearing to review the division's eligibility decision, we see no basis for allowing Centennial to circumvent that scheme by requiring review of the very same decision when Centennial was sanctioned for refusing to abide by it.

The statute and regulations required Centennial to refund Donovan his private rate payment upon notice of Columbo's eligibility, and to accept the Medicaid rate as payment in full. The regulations, as interpreted by the division, did not permit Centennial to seek administrative review of that determination. The sanction was imposed when Centennial failed to abide by the statutory mandate that it accept the Medicaid rate of payment as payment in full and refund the private payment amount to Donovan. Centennial's challenge in this context is more appropriately addressed to the regulations that denied it a right to a hearing on Columbo's eligibility. Centennial has not pressed such a claim, and so we do not reach it.

The judge affirmed the board's decision as supported by the evidence that Centennial violated its statutory obligations, and as correct as matter of law. On this record, we affirm.

5. *Claim for payment after Medicaid eligibility expired.* As a final matter, Centennial argues that the judge wrongly dismissed that portion of its breach of contract claim against Donovan for amounts owed for nursing care after October, 1999. Reading the complaint broadly, as we must, see *Nader* v. *Citron,* 372 Mass. 96, 98 (1977); *Harvard Law Sch. Coalition for Civil Rights* v. *President & Fellows of Harvard College,* 413 Mass. 66, 68 (1992), our review of the record on appeal confirms that the claim for payment was sufficiently pleaded in Centennial's complaint, and was adequately preserved in Centennial's opposition to Donovan's motion to dismiss. We accordingly reverse and remand for further proceedings on count VI of Centennial's complaint against Donovan, seeking recovery of amounts owed for nursing home and health care services from October, 1999, through 2001.

*So ordered.*